Victor F. KAYFETZ and Victor Kayfetz
Productions, Inc., Plaintiffs,

v.

William J. WALKER, Defendant.

No. B–718.

United States District Court,
D. Connecticut.

Nov. 13, 1975.

Richard L. Albrecht, Cohen & Wolf, Bridgeport, Conn., for plaintiff.

James F. Kenney, Clancy, Kenney & Scofield, Bridgeport, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS

LUMBARD, Circuit Judge, Sitting by Designation.

Plaintiffs, Victor F. Kayfetz and Victor Kayfetz Productions, Inc., have brought this action to recover for personal injuries and property damage allegedly suffered in a collision with a sailing yacht operated by defendant William J. Walker. On May 19, 1972, plaintiff Kayfetz and defendant were engaged in a sailing race conducted on Long Island Sound by the Larchmont Yacht Club of Larchmont, New York. Kayfetz was at the time the captain and helmsman of the yacht "Pegasus," which was owned by Victor Kayfetz Productions. The defendant was the captain and helmsman of the yacht "Wildcat." During the race, "Pegasus" and "Wildcat" collided. It is alleged that the collision was caused by defendant's faulty operation of "Wildcat" and resulted in the complained of injuries. Defendant has moved to dismiss the action by alleging that maritime jurisdiction, under which plaintiff seeks admission to federal court, does not exist. The motion is denied.

In order to meet the requirements of federal admiralty or maritime jurisdiction, a plaintiff must satisfy two requirements. First, the wrong complained of must have occurred on navigable waters. Second, the wrong must bear a significant relationship to traditional maritime activity such as "navigation and commerce." *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). All parties agree that the collision in dispute occurred on navigable waters. Defendants contend, however, that because the accident arose during a sailing race which was allegedly undertaken "for the purpose of recreation and relaxation" there is no relationship between the collision and traditional maritime activity.

Since the *Executive Jet* decision, courts have divided on the issue of whether small pleasure craft are engaged in traditional maritime activity and are thus within federal admiralty jurisdiction. Those cases that have held or implied that the jurisdiction should not extend so far, however, have not concerned collisions between such vessels. See *Crosson v. Vance,* 484 F.2d 840 (4th Cir. 1973) (implying that there are impressive arguments for precluding such craft from admiralty jurisdiction and holding that the jurisdiction did not obtain where a water skier was injured while being towed by a small waterboat); *King v. Harris-Joyner Co.,* 384 F.Supp. 1231 (E.D.Va.1974) (jurisdiction does not apply where plaintiff's decedent was killed when his small pleasure craft exploded on a navigable body of water). See also Stolz, *Pleasure Boating and Admiralty: Erie at Sea,* 51 Calif.L. Rev. 661 (1963). Other courts have found that *Executive Jet* did not preclude noncollision cases from admiralty jurisdiction. See *Szyka v. United States Secretary of Defense,* 525 F.2d 62 at 64 (2d Cir. 1975) (". . . shelling from shore allegedly injuring passengers in a pleasure boat would rather plainly bear a significant relationship to traditional maritime activity" [dictum]); *St. Hilaire Moye v. Henderson,* 496 F.2d 973 (8th Cir. 1974) (admiralty jurisdiction upheld where injuries were sustained due to improper operation of small pleasure craft on navigable waters).

The Supreme Court has indicated that the injury that underlies the suit may govern the applicability of admiralty or maritime jurisdiction. Thus, in *Executive Jet,* the Court said:

The law of admiralty has evolved over many centuries, designed and molded to handle problems of vessels relegated to ply the waterways of the world, beyond whose shores they cannot go. That law deals with navigational rules —rules that govern the manner and direction those vessels may rightly move upon the waters. When a collision occurs or a ship founders at sea, the law of admiralty looks to those rules to determine fault, liability, and all questions that may arise from such a catastrophe.

409 U.S. at 269–70, 93 S.Ct. at 505.

This court believes, therefore, that in determining the applicability of admiralty jurisdiction, the circumstances surrounding the dispute are of more importance than the size or function of the vessel.[1] The court thus adopts the test for "traditional maritime activity" that was employed in *Kelly v. Smith,* 485 F. 2d 520 (5th Cir. 1973), *cert. denied,* 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974). In that case, the court upheld admiralty jurisdiction where plaintiffs were shot at while fleeing in a small craft from a hunting area in which they had been poaching. The court held that the factors to be considered in determin-

---

1. This conclusion is reinforced by the broad definition of "vessel" in 1 U.S.C. § 3. That section provides: "The word 'vessel' includes every description of watercraft or other ar-tificial contrivance used, or capable of being used, as a means of transportation on water."

ing the applicability of admiralty jurisdiction were: the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and the type of injury; and traditional concepts of the role of admiralty law. 485 F.2d at 525.

■ In the instant case all parties concerned were actively engaged in the navigation of vessels. No non-navigational vehicle or instrumentality was involved. The injuries complained of allegedly resulted from disregard for rules of proper navigation. The subsequent collision certainly falls within the scope of injuries of which admiralty or maritime law traditionally have taken cognizance.

That the parties were involved in a sporting event at the time of the collision is immaterial, and, in any event, is outweighed by those factors that argue for admiralty jurisdiction. Indeed, this case demonstrates the futility of trying to create a dichotomy between recreational activity and commercial activity. Plaintiff, whose uncontroverted factual allegations must be accepted as true on this motion, *A. T. Brod & Co. v. Perlow,* 375 F.2d 393 (2d Cir. 1967), even though they would be somewhat surprising to the members of the Larchmont Yacht Club, has submitted an affidavit in which he claims that he entered the race for the purpose of establishing a racing record to further the business of his company.

■ In any event, this court has jurisdiction because of the diverse citizenship of the parties. Plaintiff has alleged, and defendant has admitted, that Victor F. Kayfetz is a citizen of the State of New York, Victor Kayfetz Productions is a corporation incorporated and having its principal place of business in New York, and defendant Walker is a citizen of the State of Connecticut. This court may take cognizance of the parties' diversity of citizenship and exercise jurisdiction under 28 U.S.C. §

1332 despite any defects in the originally alleged basis of jurisdiction. See *United States v. The John R. Williams,* 144 F.2d 451 (2d Cir. 1944); *Oberfest v. Cargo Ships and Tankers, Inc.,* 272 F.Supp. 567 (E.D.Va.1967). *Cf. Eastern Steel & Metal Co. v. Hartford Fire Insurance Co.,* 376 F.Supp. 763 (D. Conn.1974).

Motion denied.