**KEENE CORPORATION,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

No. 32, Docket 82–6023.

United States Court of Appeals,
Second Circuit.

Argued Oct. 1, 1982.

Decided Feb. 10, 1983.

Eugene R. Anderson, New York City (Anderson, Russell, Kill & Olick, P.C., New York City, Irene C. Warshauer, Marcy Louise Kahn, Frederic L. Neustadt, Daniel N. Sang, New York City, of counsel), for plaintiff-appellant.

David M. Jones, Asst. U.S. Atty., Southern District of New York, New York City (John S. Martin, Jr., U.S. Atty., Southern District of New York, Peter C. Salerno, Asst. U.S. Atty., Southern District of New York, New York City, of counsel), for defendant-appellee.

Before LUMBARD, OAKES and WINTER, Circuit Judges.

WINTER, Circuit Judge:

█ Keene Corporation appeals from a judgment dismissing its complaint for lack of subject matter jurisdiction entered by Judge Gerard L. Goettel, United States District Court for the Southern District of New York. The gravamen of Keene's complaint is that the United States is liable under various legal theories for the costs of more than 14,000[1] personal injury and wrongful death actions against Keene, arising from occupational exposure to asbestos fibers contained in thermal insulation products manufactured or sold by a Keene affiliate.[2] On appeal, Keene urges that jurisdiction over this action exists under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671–2680 (1976) or, alternatively, under the general maritime and admiralty jurisdiction of the United States, 28 U.S.C. § 1333 (1976), the Suits in Admiralty Act, 46 U.S.C. §§ 741–752 (1976), the Extension of Admiralty Jurisdiction Act, 46 U.S.C. § 740 (1976), and the Public Vessels Act, 46 U.S.C. §§ 781–790 (1976).[3]

Keene's amended complaint alleges that the United States is liable to it for all costs arising out of the more than 14,000 actions.

However, it has made no attempt to categorize the actions against it on the basis of individual characteristics, such as the role played by the United States, the employment relationship of the claimants, the circumstances under which they came into contact with asbestos, or the theory or theories of liability. Some of Keene's allegations, moreover, use terms such as "most" or "typically" in describing the actions against it.

For example, the complaint alleges that the government played the following roles relating to the actions against it: a seller of asbestos fiber, a purchaser of asbestos insulation, a designer or specifier of insulation products, an employer of the claimants or their employers, an inspector of the claimants' workplace, and a promulgator and enforcer of health regulations. In the case of any particular claim against Keene, however, the government may have played only one of these roles. Similarly, Keene alleges only that "most" of the claimants were "either employees of the defendant working in U.S. naval shipyards or employees working in private shipyards under contract to

1. In January, 1979, when Keene filed its Amended Notice of Claim with a number of government agencies in an attempt to comply with the Federal Tort Claims Act, approximately 1,000 suits had been brought against the company. The original complaint in this action was filed on January 2, 1980. By November of that year, approximately 5,959 cases and claims had been filed against Keene, and as of April 1, 1982, 12,775 lawsuits had been filed. At oral argument on October 1, 1982, counsel for Keene informed us that the number of suits now exceeded 14,000, roughly 45 more cases being filed each week. As of April 1, 1982, only 2,888 of these claims had been terminated, either by settlement, verdict, non-suit or dismissal.

2. Keene Corporation was organized in 1967 and one year later acquired most of the stock of Baldwin-Ehret-Hill, Inc. ("BEH"). BEH, together with its predecessors, manufactured and sold thermal insulation products containing asbestos. In 1970 BEH was merged into a newly created wholly-owned Keene subsidiary, Keene Building Products Corporations ("KBPC"). In 1974, KBPC transferred all assets and liabilities relating to the thermal insulation products to a division of Keene known as Keene Insulation and Contracting Division. Keene then sold its

stock in KBPC to an unidentified person. KBPC and its predecessors have been named as defendants in an unspecified number of the lawsuits.

3. In the district court, Keene also raised, as grounds for jurisdiction, the general federal question jurisdiction of the court, 28 U.S.C. § 1331 and the common law. Although Keene all but abandons these claims on appeal, see infra note 13, it is clear that Section 1331 does not establish a waiver of sovereign immunity and therefore cannot act as a basis for federal jurisdiction in this case.

Keene has also brought an action for breach of contract against the government which is currently pending before the Court of Claims. See Keene Corp. v. United States, No. 579–79C (Ct.Cl., filed Dec. 21, 1979). Keene's petition in the Court of Claims seeks damages for indemnity and contribution arising from express and implied contracts between the government and KBPC. In that action, the Court of Claims denied a government motion for summary judgment on the ground that material issues of fact remain in dispute. Keene Corp. v. United States, No. 579–79C (Ct.Cl. May 1, 1981) (per curiam).

the U.S. Navy, an agency of the United States." According to Keene, the claimants "typically" assert that they worked with or around thermal insulation products bearing asbestos and that in the course of their work, they were exposed to and inhaled air-borne asbestos fibers, causing asbestosis or other injuries. "Typically," the complaint alleges, the workers were involved in shipyards, some working on shipboard, some on land, while still others were exposed to asbestos in the course of installing insulation in "power plants and other industrial and commercial plants, including refineries." The government sold Keene some of, but apparently not all, the asbestos used in its products, and Keene's asbestos-containing products were sold under contract both to the government and to others. On the basis of these allegations, Keene asserts against the United States twenty-three causes of action, sounding in negligence, breach of warranty, strict liability, and unjust enrichment.

Keene has denied the allegations of all 14,000 complaints and has not yet been subjected to a final judgment of liability. It has, however, settled some of the claims and incurred expenses in the defense of others. Relying upon the doctrines of indemnification, contribution and apportionment, Keene argues that the government is liable for any and all damages it may sustain as a result of the lawsuits against it.

The unusual nature of the complaint and the legal problems it raises stem from the sheer volume and diversity of claims brought against Keene. Keene's counsel asserts, and we have no reason to doubt it, that Keene simply cannot afford to hire local counsel and defend each case in the many state and federal judicial districts in which actions have been brought against it. Presumably, it also cannot afford the discovery necessary to analyze and categorize each action so that some semblance of order can be brought to its complaint or even to implead the government as a third party defendant in actions pending in federal district courts.

As the complaint before us stands, potentially dozens of materially different factual combinations are within its allegations. Looking at the more specific allegations, the government may have played at least six different roles involving at least three different categories of claimant/employees, who came into contact with Keene asbestos products in at least three different work settings. Some of Keene's products were sold to the government, some to others. Some were manufactured with asbestos purchased from the government, some with asbestos purchased elsewhere. The complaint is not limited even to these variables, however, since the words "most" and "typically" strongly imply the existence of actions with other factual patterns. Twenty-three separate causes of action against the government are alleged.

The complaint thus literally alleges dozens of factual combinations, e.g., (1) The government purchased insulation from Keene containing asbestos procured from a private producer; the insulation was used in a private shipyard under contract to the government where employees of the shipyard were in contact with it on land; (2) A refinery purchased insulation from Keene containing asbestos procured from a private producer; employees of the refinery came into contact with it in circumstances covered by government health regulations; (3) A refinery purchased insulation from Keene containing asbestos purchased from the government; employees of the refinery came into contact with it; (4) A factory purchased insulation from Keene containing asbestos procured from a private producer; the product used asbestos pursuant to government specifications and employees of the factory came into contact with it; and so on. Each combination of facts, moreover, may raise a different legal issue so far as to the government's liability to Keene or our jurisdiction is concerned.

Were this an action against a private party, the sufficiency of the notice given by the complaint would obviously be a serious issue. Since the United States is the defendant, however, and actions against it are permissible only where sovereign immunity

has been waived, we must first address the government's challenge to our jurisdiction. We agree with Judge Goettel, whose efforts in reducing this suit to order we much appreciate, that "Keene has attempted to do too much at one time, with too little jurisdiction," *Keene Corp. v. United States,* No. 80 Civ. 401, mem. op. at 22 (S.D.N.Y. Sept. 30, 1981). We affirm his dismissal of the complaint for substantially the reasons stated in his opinion.

## FEDERAL TORT CLAIMS ACT

The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–2680, requires that a claimant against the federal government file an administrative claim with the appropriate agency prior to institution of suit. Thus, 28 U.S.C. § 2675(a) provides in pertinent part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.... The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counter-claim.

Keene contends that it has met the administrative filing requirements or, alternatively, that no administrative filing was necessary because its suit is "in the nature of a third party action."

In September 1978, Keene filed a Notice of Claim with eight federal agencies;[4] four months later, in January 1979, it filed an Amended Notice of Claim.[5] The Amended Notice contained a list of lead plaintiffs and docket numbers for roughly a thousand lawsuits.[6] It described the claims against Keene as contending generally that the company had sold products containing asbestos fiber without adequate warning of the dangers posed by asbestos and stated that "[m]any if not all of the Asbestos Claims against Keene arise out of the primary fault of United States of America." The Amended Notice stated five separate claims based on (1) the government's role as supplier of asbestos; (2) its role as employer of shipyard workers who were exposed to asbestos fibers on the job; (3) the government's failure to take precautions or warn workers regarding the dangers of asbestos after it required the use of asbestos in insulating products it purchased; (4) the failure of the government to make safety inspections of facilities using asbestos; and (5) "any other theory that will support a claim against the United States of America for Damages."

Keene did not link any of the one thousand appended claims with one or another of these grounds of liability. It simply asserted that

> [t]o the extent that Keene settles or has settled any such claim and to the extent that Keene has been or is held liable in any court or administrative tribunal or has incurred costs and expenses, including

---

4. These agencies included the General Services Administration, the Department of Justice, the Judge Advocate General of the Army, the Department of Health, Education and Welfare, the Surgeon General, the Department of Defense, the Department of Labor, and the United States Public Health Service.

5. Since Keene's Amended Notice of Claim was filed prior to final administrative disposition of the September Notice, it totally supercedes that initial Notice. *See* 28 C.F.R. § 14.2(b).

6. Keene asserts that it has filed a subsequent Notice of Claim for another 3,822 claims, more or less, and contends that the filing of the notice during this litigation should not bar consolidation of those claims with the earlier 1,000 claims comprised in the Amended Notice, citing *Kubrick v. United States,* 581 F.2d 1092, 1098 (3d Cir.1978), *rev'd on other grounds,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *McCormick v. Cooley,* 458 F.Supp. 776 (W.D. Pa.1978). Because of the result we reach regarding the sufficiency of the Amended Notice we need not reach this issue.

attorneys' fees, costs of insurance and the cost of executive time with respect to or in connection with such Asbestos Claims, then the United States of America is liable to Keene for indemnity, contribution or both. "Damages" as used herein includes all such settlements, judgments, indemnity, contribution, costs, expenses, insurance premiums, attorneys' fees, the cost of executive time, and such other and further relief as is just and proper.

The Amended Notice then stated,

The present amount of such Damages applicable to each of the claims set forth below is the sum of $1,088,135. This sum certain does not include other Damages of which Keene is not presently aware.

Later, the Amended Notice again asserted

that the United States of America is indebted to Keene for Damages in the sum of $1,088,135 and in an additional amount yet to be ascertained.

■ The requirement that a notice of claim be filed is jurisdictional and cannot be waived. *House v. Mine Safety Appliances Co.,* 573 F.2d 609, 617 (9th Cir.), *cert. denied,* 439 U.S. 862, 99 S.Ct. 182, 58 L.Ed.2d

171 (1978). Moreover, because the FTCA constitutes a waiver of sovereign immunity, the procedures set forth in Section 2675 must be adhered to strictly. *Three-M Enterprises, Inc. v. United States,* 548 F.2d 293, 295 (10th Cir.1977); *Brown v. General Services Administration,* 507 F.2d 1300, 1307 (2d Cir.1974), *aff'd,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

■ Since Keene has filed no Notice of Claim regarding the vast majority of the suits against it,[7] it is clear that no jurisdiction exists under the FTCA as to these claims. As to the remaining claims, the government also contends that the Amended Notice is defective because it failed to state a sum certain, 28 C.F.R. § 14.2 (1980), and because it does not provide sufficient information to permit an investigation, *see* 28 C.F.R. § 14.4 (1980), as required by regulations promulgated pursuant to 28 U.S.C. § 2672.[8]

While there is a conflict among the courts concerning whether the administrative filing requirements of Section 2675—which are jurisdictional in nature—should be read in the light of regulations issued under 28 U.S.C. § 2672,[9] courts seem agreed that the

---

**7.** See *supra* note 6.

**8.** 28 U.S.C. § 2672 provides in pertinent part that

[t]he head of each Federal agency or his designee, in accordance with regulations prescribed by the Attorney General, may consider, ascertain, adjust, determine, compromise, and settle any claim for money damages against the United States for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred: *Provided,* That any award, compromise, or settlement in excess of $25,000 shall be effected only with the prior written approval of the Attorney General or his designee.

**9.** For example, the Fifth Circuit has ruled that the regulations do not apply to Section 2675 because they bear solely on the procedures to be followed for the settlement of claims and not on the manner in which a claimant must

present his or her claim. *Adams v. United States,* 615 F.2d 284, 288 (5th Cir.1980). Similarly, in *Douglas v. United States,* 658 F.2d 445, 447–48 (6th Cir.1981), the Sixth Circuit held that

[t]hese regulations, however, govern administrative settlement proceedings; they do not set federal jurisdictional prerequisites. By failing to comply with regulations promulgated under 28 U.S.C. § 2672, a claimant loses only "the opportunity to settle his or her claim outside the courts." (citation omitted)

In contrast, other circuits have applied the Section 2672 regulations in determining the sufficiency of a Notice of Claim. *See, e.g., House v. Mine Appliances,* 573 F.2d at 615–16; *Lunsford v. United States,* 570 F.2d 221, 225 (8th Cir. 1977); *Pennsylvania v. National Association of Flood Insurers,* 520 F.2d 11, 19–20 (3d Cir. 1975). Although the Second Circuit has not directly addressed the issue, district judges in this circuit have applied the Section 2672 regulations to Section 2675. *See, e.g., Luria v. Civil Aeronautics Board,* 473 F.Supp. 242, 244 (S.D. N.Y.1979); *Kantor v. Kahn,* 463 F.Supp. 1160 (S.D.N.Y.1979). We find it unnecessary to decide this issue.

statement of damages in any Notice of Claim must contain a sum certain. *See, e.g., Adams v. United States, supra* note 9, 615 F.2d at 291 n. 15 (Section 2672 regulations do not apply to Section 2675 but the claimant still must state a sum certain). Section 2675 is designed, in conjunction with Section 2672, to provide a procedure under which the government may investigate, evaluate and consider settlement of a claim. This purpose requires that the Notice of Claim provide sufficient information both to permit an investigation and to estimate the claim's worth. It seems clear to us that a claim which includes "an additional amount yet to be determined," which may dwarf the sum stated, is a request for damages so indefinite as to fail to satisfy the statutory purpose. Faced with a reservation as to future damages which may entail huge sums, government officials cannot possibly evaluate the claim with a view to settlement.

■ Keene suggests that the Court may strike as surplusage the reservation as to future claims, *Erxleben v. United States,* 668 F.2d 268 (7th Cir.1981); *Fallon v. United States,* 405 F.Supp. 1320, 1322 (D.Mont. 1976). However, Keene failed to satisfy statutory purpose even as to its $1,088,135 claim because it did not specify the amount of indemnity or contribution it demanded for each underlying lawsuit. Where separate claims are aggregated under the FTCA, the claimant must present the government with a definite damage amount for each claim. *Kantor v. Kahn, supra* note 9, 463 F.Supp. at 1164. Only with a breakdown on a claim by claim basis can the government evaluate the underlying merits of the claims against it in order to decide whether to settle or to litigate.

■ Keene's Amended Notice is insufficient on yet a second ground. The generality of the statement claiming liability on the part of the government failed to provide sufficient information regarding the nature and merits of Keene's claim so far as liability is concerned. The burden is on the claimant to provide this information, *Kan-*

*tor, supra,* and that burden is not met simply either because the government is generally familiar with asbestos litigation or because the case names and docket numbers are appended to the Notice. Keene's Notice does no more than create an opportunity for the government to sift through the record of each of the lawsuits named. That is not sufficient notice to enable the government to evaluate its exposure so far as liability is concerned.

The problem of the sufficiency of notice in this case is more than a question of technical niceties. Keene's laundry list of potential variables makes it impossible for the government—or a court—to evaluate Keene's action against the government. Dozens of different combinations of material facts are possible under the complaint, and the exposure of the government on liability may vary enormously between them, yet, short of a detailed examination of each action against Keene, the government cannot evaluate that exposure. Keene's failure even to organize the individual suits by general category simply makes it impossible for the government to respond to Keene's suit. We are aware that the cost of ordering the thousands of actions brought against Keene may be staggering. The FTCA, however, does not authorize us to balance relative means or relative hardships but places the burden on the claimant to provide sufficient details of the claim made against the government.

■ Keene contends that it is excused from the filing requirement because its suit is in the nature of a third party complaint, 28 U.S.C. § 2675. However, under Fed.R. Civ.P. 14, a third party action is one in which a defendant asserts a claim against a non-party to the original action for all or part of the plaintiff's claim against him. Since Keene is the original complainant in this suit, its action is not within Rule 14. *See generally,* 6 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1441, 1453–55 (1971). We perceive no reason to read the FTCA's reference to third party

actions as including more than is encompassed by Rule 14.[10]

## ADMIRALTY JURISDICTION

 The Suits in Admiralty Act ("SIAA"), 46 U.S.C. §§ 741–752, and the Public Vessels Act ("PVA"), 46 U.S.C. §§ 781–790, waive sovereign immunity in the area of maritime torts. Under the SIAA the United States waives sovereign immunity with respect to cases in which "if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained." 46 U.S.C. § 742. The PVA waives sovereign immunity with respect to "damages caused by a public vessel of the United States." 46 U.S.C.

§ 781. Keene argues that even if we lack jurisdiction over its claim under the FTCA,[11] federal jurisdiction exists in admiralty.

 Admiralty jurisdiction in tort exists when the wrong (1) took place on navigable waters ("situs") and (2) "bear[s] a significant relationship to traditional maritime activity" ("status"). *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 254–61, 93 S.Ct. 493, 497–01, 34 L.Ed.2d 454 (1972); *Foremost Insurance Co. v. Richardson,* —— U.S. ——, ——, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982) (approving application of *Executive Jet* test outside the context of aviation torts); *see also Kayfetz v. Walker,* 404 F.Supp. 75, 76 (D.Conn.1975) (Lumbard, Circuit Judge).[12]

**10.** Keene relies heavily upon a case decided by Judge Blumenfeld, *Raybestos-Manhattan, Inc. v. United States,* No. H–78–416 (D.Conn. Feb. 15, 1979). In that case, approximately 100 suits had been filed against Raybestos, a manufacturer of asbestos insulation products, by employees of the Electric Boat Division of the General Dynamics Corporation for damages as a result of their exposure to asbestos. Other insulation manufacturers were also named as defendants in the suit. Raybestos, however, was the only defendant which was a citizen of Connecticut and, as a result of the absence of diversity jurisdiction, the Electric Boat employees, who were also Connecticut citizens, had to sue Raybestos in a state court, while those who were citizens of Rhode Island brought their actions in the District of Connecticut.

While Raybestos impleaded the United States in the federal suits, it was unable to implead the United States in the state court actions, 28 U.S.C. § 1346(b), and, therefore, filed an independent action in the district court for indemnity and contribution for the state court actions. Judge Blumenfeld denied the government's motion to dismiss for lack of subject matter jurisdiction, holding that the action should be brought within the third party exception of 28 U.S.C. § 2675(a) in order to further the joinder policies behind Fed.R.Civ.P. 14 and to avoid needless duplication of litigation. Judge Goettel distinguished *Raybestos* on the grounds that Judge Blumenfeld's ruling created the opportunity for joint trial and joint discovery for a small number of claims that were in almost every way similar to and a part of the larger federal action. While *Raybestos* involved indemnification for suits in only one federal district and the courts of one state, the present case involves suits in numerous federal and state courts. Finally, unlike the defendant in

*Raybestos,* Keene has failed to implead the United States into those suits which were brought against it in the federal courts. Since we hold that Keene's action is clearly not covered by Rule 14, we express no opinion as to the merits of the distinctions relied upon by Judge Goettel as far as *Raybestos* is concerned.

**11.** These jurisdictional bases are mutually exclusive. The FTCA specifically provides that it does not apply to suits in admiralty against the United States. 28 U.S.C. § 2680(d).

**12.** Keene argues that the situs test must be read in the light of the Extension of Admiralty Jurisdiction Act ("EAJA"), 46 U.S.C. § 740, which extends admiralty jurisdiction to injuries on land caused by a vessel or its appurtenances, and, relying upon *White v. Johns-Manville Corp.,* 662 F.2d 234, 239 (4th Cir.1981), *cert. denied,* 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982) ("White II"), asserts that once installed, asbestos-containing insulation becomes an appurtenance of the vessel. However, Keene has failed to meet the requirements of the EAJA. Like the FTCA, the EAJA requires submission of a notice of claim to the appropriate federal agencies prior to filing suit in the district court. Keene's Amended Notice does not constitute an adequate "claim" under the EAJA for the same reason that it fails to satisfy the FTCA notice requirements. Keene's argument regarding the EAJA is also somewhat beside the point in view of our holding that its claim satisfies neither the situs nor the status tests of *Executive Jet.* Although failure to satisfy either would be fatal to admiralty jurisdiction, our reasoning in rejecting the claim of admiralty situs applies equally to the extended situs test of the EAJA.

The Amended Complaint states that "[m]ost of the claimants [against Keene] were involved in installing high temperature thermal insulation around pipes and boilers on naval ships, on vessels in navigable waters, and in power plants and other industrial and commercial plants, including refineries." Admiralty jurisdiction clearly does not extend to those workers who were exposed to asbestos in power plants, refineries, and other land-based commercial facilities, and even if the other workers were exposed to asbestos in a maritime situs, see *White II, supra* note 12, 662 F.2d at 242 (Widener, J., concurring), it is impossible to determine which of the underlying actions would be properly heard in admiralty, and which not, without a case by case evaluation. Where a group is composed of workers with and without maritime. status, admiralty jurisdiction does not exist as to the group. *Brown v. United States,* No. H–76–434, slip op. at 21–22 (D.Conn. July 23, 1979). Keene now offers to make such an individualized showing in an evidentiary hearing before the district court. Since Keene refused several previous opportunities to individualize the claims against it, we believe this offer comes too late. Moreover, Keene has not met the second prong of the *Executive Jet* test, the status requirement, and a hearing on individualized situs would be futile.

Keene argues that the fact that its products were ultimately installed and used on shipboard is, by itself, sufficient to meet the status test of *Executive Jet.* However, Keene's argument makes the geographic location of a tort decisive as a matter of law and thus effectively collapses the situs and status test, a result *Executive Jet* expressly seeks to avoid.

In *Kelly v. United States,* 531 F.2d 1144, 1146 (2d Cir.1976), we stated that the status test is satisfied when the "acts and omissions ... sufficiently relate to traditional maritime activity," whether landbased or not. Under the *Kelly* decision, two elements are critical in this case. First, Keene does not allege that its insulation was designed specifically for maritime use.

Indeed, it appears from the complaint that it was used in a variety of land-based plants and refineries. Second, many of the roles attributed to the government and allegedly giving rise to Keene's causes of action—the government's sale of asbestos to Keene, its specification of asbestos as a component of insulation it purchased from Keene, its alleged breach of its duty to inspect the work place, its obligations as a promulgator of health regulations—do not bear a significant relationship to traditional maritime activities such as "navigation and commerce." See *Kayfetz v. Walker,* 404 F.Supp. at 76. These roles seem even less intimately connected with such activities than contracts for shipbuilding, contracts to supply materials for ship construction and warranties arising under such contracts, which are nonmaritime, see, e.g., *North Pacific Steamship Co. v. Hall Brothers Marine Railway and Shipbuilding Co.,* 249 U.S. 119, 126–27, 39 S.Ct. 221, 223, 63 L.Ed. 510 (1919); *White v. Johns-Manville Corp.,* 662 F.2d 243, 247 (4th Cir.1981) ("White I"); G. Gilmore and C. Black, *The Law of Admiralty* 26 (2d ed. 1975), and contracts for services to a vessel laid up and out of navigation, also non-maritime status. G. Gilmore and C. Black, *The Law of Admiralty* at 26. Indeed, a tort arising out of work on an uncompleted vessel has been held to fall outside admiralty jurisdiction. *Hollister v. Luke Construction Co.,* 517 F.2d 920, 921 (5th Cir.1975) (per curiam). General allegations that the contacts with asbestos took place in shipyards or even aboard launched vessels are thus insufficient to establish admiralty jurisdiction. These defects in the complaint are fatal as well to Keene's argument that its contractual breach of warranty and indemnity claims sound in admiralty. The government's sale of asbestos to Keene is a contract lacking in maritime flavor, as is, absent further specification, Keene's provision of insulation to the government.

Viewed as a whole, therefore, Keene's claims fail to implicate traditional concepts of maritime law such as seaworthiness, cargo damage, salvage, or the like. We expressly decline to follow the reasoning of the Fourth Circuit in *White II,* 662 F.2d at 239–40 (holding that the personal

injury claims of shipyard workers engaged in installation of asbestos insulation are cognizable in admiralty), *White I,* 662 F.2d at 249 (holding the manufacturers' third party complaint against the workers' employer also fell within admiralty jurisdiction), and *Glover v. Johns-Manville Corp.,* 662 F.2d 225, 232 (4th Cir.1981) (insofar as it held that admiralty jurisdiction might exist over manufacturers' indemnity claims against the government under the SIAA or PVA) and, as well, the reasoning of the Fifth Circuit in *Sperry Rand Corp. v. Radio Corporation of America,* 618 F.2d 319 (5th Cir.1980) (holding that an action for indemnity or contribution could be brought in admiralty against a manufacturer whose products were implicated in a grounding of a vessel and a collision upon navigable waters even though the articles in question were not designed specifically for marine use).[13]

## CONCLUSION

Our rejection of Keene's claims in no sense reflects either a lack of sympathy for its predicament or a belief that Keene's counsel might have somehow remedied the fatal defects in its complaint. The very volume and diversity of claims which have placed Keene in its unfortunate position also preclude the wholesale adjudication of its essentially individual, retail claims against the government. Upholding Keene's complaint might well "put the government's feet to the fire" in order to provoke a legislative solution to the burgeoning asbestos litigation, but it would also do violence to established processes of the judicial system and well established principles relating to the FTCA and admiralty jurisdiction.

Affirmed.

---

13. Insofar as we find that Keene has not met the jurisdictional requirements of the FTCA, SIAA or PVA, we need not consider its claims under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. §§ 8101–8193 (1976). The FECA is the exclusive remedy of federal employees, such as federal shipyard workers, against the United States, although they may, of course, institute suit against third parties such as Keene. The FECA does not constitute a waiver of sovereign immunity as to third parties; indeed it bars suits against the United States for contribution and indemnification by joint tortfeasors. *See* 5 U.S.C. § 8116(c); *Galimi v. Jetco, Inc.,* 514 F.2d 949, 953 (2d Cir. 1975). Even were suits for indemnification possible, because there is no waiver of sovereign immunity under the FECA, Keene would be required to assert an independent jurisdictional base under FTCA, SIAA, or PVA. For the reasons stated in the body of this opinion, such jurisdictional grounds are foreclosed. General federal question jurisdiction, 28 U.S.C. § 1331, is also lacking because it contains no waiver of sovereign immunity. *See supra* note 3. To the extent that Keene's claims for indemnity are contractual, its remedy is in the Court of Claims under the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491. *See Galimi,* 514 F.2d at 951 n. 2.

Keene also seeks recovery of the FECA benefits that the government has recouped from government employee asbestos claimants through its statutory lien on their awards or settlements from third parties. 5 U.S.C. § 8132. Once again Keene claims jurisdiction for its claim under the FTCA and SIAA, which we have already held to be barred. Keene also raises general federal question jurisdiction for this claim, alleging, *inter alia,* that there has been an unconstitutional taking of property without due process. We agree with Judge Goettel that insofar as Keene relies on Section 1331 to establish federal jurisdiction for a suit involving a constitutional tort following the rationale of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), it is mistaken precisely because there is no waiver of sovereign immunity. *Bivens* authorizes suits against the responsible federal official, *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978), not against the government itself, *Norton v. United States,* 581 F.2d 390, 393 (4th Cir.), *cert. denied,* 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 678 (1978), and *Bivens*-type actions against the United States are, as the district court noted, routinely dismissed for lack of subject matter jurisdiction. *See, e.g., Contemporary Mission, Inc. v. United States Postal Service,* 648 F.2d 97, 104 (2d Cir.1981).