EAGLE–PICHER INDUSTRIES, INC., Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 84–1360.

United States District Court, District of Columbia.

April 30, 1985.

William J. Spriggs, Joe G. Hollingsworth, Edward M. Fogarty, Gary I. Rubin, Spriggs, Bode & Hollingsworth, Washington, D.C., for plaintiff.

Harold J. Engel, Benjamin A. Dinkens, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

Again, this Court is faced with the claim of a manufacturer of asbestos products seeking relief from the United States for damages allegedly sustained in settling various private "underlying" suits brought against it. Plaintiff Eagle-Picher Industries ("Eagle-Picher") has sued the United States seeking indemnity, contribution, apportionment and other money damages under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, and the provisions of several admiralty

statutes.[1] Eagle-Picher contends that the underlying suits were brought by various plaintiffs who alleged personal injury and death resulting from their exposure to harmful quantities of asbestos fibers contained in thermal insulation products which it manufactured. Eagle-Picher then filed a single omnibus action seeking reimbursement for 559 underlying claims which has culminated in this litigation.

Pursuant to Rule 12(b)(1) Fed.R.Civ.P., the government has moved to dismiss the complaint on several jurisdictional grounds: the plaintiff's claim for various damages is barred by applicable statute of limitations; the administrative claim fails to provide sufficient information and thus the minimal notice requirements of the FTCA has not been satisfied resulting in failure to exhaust administrative remedies; and lack of admiralty jurisdiction because none of the wrongs alleged in the complaint bear a significant relationship to maritime activities.

The matter has been exhaustively briefed and ably argued by counsel for the parties. For the reasons stated below, the Court grants the government's motion to dismiss.

## BACKGROUND FACTS

On July 27, 1983, Eagle-Picher submitted an administrative claim to the Department of the Navy and to six other federal agencies.[2] The claim sought nearly $5 million in damages under the FTCA. Eagle-Picher alleged that the United States was liable for indemnity, contribution, apportionment and other monetary relief for its costs in defending and settling 559 underlying asbestos-related actions. In support of its claim for damages as to the 559 underlying actions, Eagle-Picher submitted one Standard Form 95 [3] with attachments. The attachments included documents identifying Eagle-Picher's "primary" and "excess" asbestos insurance coverage (Attachment I),[4] a list of agencies to which plaintiff forwarded copies of its administrative claim (Exhibit A), information about each of the underlying plaintiffs (Exhibit B), and the alleged damages incurred by Eagle-Picher as to each underlying plaintiff (Exhibit C). The claim itself consisted of a 42 page narrative statement of background factual information and a description of the legal claims.

In early November 1983, the government sent Eagle-Picher identical individual letters regarding approximately 343 of the underlying claimants advising that its administrative claim did "not satisfy the notice requirements of section 2675(a) of the Federal Tort Claims Act ..." [5] Plaintiffs' Opposition to Motion to Dismiss at Exhibit L. The letters contained specifications for information which the government considered necessary before it would declare the claims to have been filed in compliance with § 2675(a).[6] Eagle-Picher responded in

1. The Suits in Admiralty Act, 46 U.S.C. §§ 741–752; the Public Vessels Act, 46 U.S.C. §§ 781–790; the Admiralty Extension Act, 46 U.S.C. § 740; and the general admiralty law of the United States, 28 U.S.C. §§ 1333.

2. The agencies included: the Department of Justice, the Department of Defense, the Department of Transportation, the General Services Administration, the Department of Health and Human Services, and the Department of Labor.

3. Standard Form 95 is the official claim form required by the government to process claims under the FTCA.

4. The citations to the attachments to the Form 95 claim are all found in Attachment A to Defendant's Motion to Dismiss.

5. Eagle-Picher has stated that it eventually received 211 additional letters a number of months later. Plaintiff's Opposition to Motion to Dismiss at 16 n. 22.

6. The plaintiff has included in the record evidence of correspondence with the Department of Labor, Plaintiff's Opposition to Motion to Dismiss at Exhibit J, relating to a November 22, 1982 administrative claim filed by it of the same nature that was deemed invalid. Eagle-Picher suggests that because the only problems specifically isolated in the 1982 letter were the failure to indicate a "sum certain" for the total claim and the failure to break down the individual damage claims, the government is estopped from asserting additional grounds of invalidity regarding the 1983 claim. The Court does not accept that premise. The letter itself states that it would "detail *some* of the specific problems" (emphasis added) with the administrative claim; it did not represent that those grounds were the

a single letter to the Department of Labor on November 29, 1983 and stated that it construed the Department's letters as a denial of its administrative claim. Defendant's Motion to Dismiss at Exhibit D. Six months after receiving the first set of letters from the government, Eagle-Picher filed this complaint.

## ANALYSIS

### A.

In its motion to dismiss, the government argued that Eagle-Picher is barred by the statute of limitations from including 219 of the 559 underlying claims in its omnibus claim. 28 U.S.C. § 2401(b) (two year statute of limitations for tort claims against the government). In its opposition to the motion, Eagle-Picher conceded that it would only be pursuing 343 of the underlying claims. Plaintiff's Opposition to Motion to Dismiss at 2 n. 1. Because of the disposition of the adequacy of the claim issue, the Court need not make a finding as to the few disputed claims.[7]

■ In its complaint, Eagle-Picher invoked this Court's admiralty jurisdiction. The defendant argues that admiralty jurisdiction does not arise from the type of claims which Eagle-Picher presents. That proposition is unopposed by the plaintiff. It is clearly the law that admiralty jurisdiction does not lie with claims arising from asbestos exposure in shipyards or aboard vessels. *See, e.g., Harville v. Johns-Manville Products Corp.*, 731 F.2d 775, 781

(11th Cir.1984); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1190 (5th Cir.1984); *Austin v. Unarco Industries, Inc.*, 705 F.2d 1, 14 (1st Cir.1983), *cert. denied*, 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983); *Keene Corp. v. United States (Keene I)*; 700 F.2d 836, 844–45 (2d Cir. 1983), *cert. denied*, — U.S. —, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Owens-Illinois, Inc. v. United States District Court*, 698 F.2d 967, 969 (9th Cir.1983).

### B.

■ Section § 2675(a) of the Federal Tort Claims Act requires that an administrative complaint be filed with an appropriate federal agency prior to bringing an action in court under the Act. It is widely accepted that the filing requirement contained in that section is jurisdictional. *See, e.g., Warren v. United States Department of Interior*, 724 F.2d 776 (9th Cir.1984); *Bush v. United States*, 703 F.2d 491, 494 (11th Cir.1983); *Tucker v. United States Postal Service*, 676 F.2d 954, 959 (3rd Cir. 1982); *Adams v. United States*, 615 F.2d 284, 290 (5th Cir.1980), *opinion clarified*, 622 F.2d 197 (5th Cir.1980). The government contends that Eagle-Picher has not adequately presented its claim to an agency prior to filing this action. Because the Court finds that the administrative claim has not been filed in accord with what is required by § 2675(a), this matter must be dismissed for lack of subject matter jurisdiction.[8]

---

exclusive problems with the claim. Further, plaintiff admitted recognizing that *Keene Corp. v. United States,* 700 F.2d 836 (2d Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983), imposed additional requirements on it. *See* Plaintiff's Opposition at 10–11. *But compare id.* at 11 n. 16.

**7.** The Court is somewhat puzzled by the mathematics of this case. The government, in its main brief, states that 219 claims are barred by the statute. Defendant's Motion to Dismiss at 16. Thus, according to the government's figures, 340 cases would remain viable. However, the plaintiff claims that 212 of the 559 underlying claims are barred, Opposition to Motion to Dismiss at 2 n. 1. Yet, it concludes that it is only pursuing 343 of the original claims. *Id.* at

**2.** To make matters worse, the government, in its reply, states that there are five underlying claims in dispute concerning the statute of limitations issue. Reply at n. 1. To the Court, the difference between the government's figure of 340 and the plaintiff's figure of either 343 or 347 is not five.

**8.** The Court's ruling in this case makes it unnecessary to consider whether the settlement requirements promulgated pursuant to § 2672 are also jurisdictional requirements. That question was specifically left open by the Second Circuit in *Keene I.* 700 F.2d at 841 n. 9. There is not a uniformity of opinion with regard to that issue. *See Warren,* 724 F.2d at 785–87 (Sneed, C.J., dissenting), for a discussion of some of the relevant cases.

In what it characterizes as both an attempt to comply with the requirements set forth in the first Department of Labor letter [9] and the *Keene I* decision, and to avoid litigation over the issue, Eagle-Picher contends that it compiled and submitted factual information in its Form 95 claim in excess of what it deemed necessary under § 2675(a). Eagle-Picher's claim included ten boxes of factual data on the underlying claimants. Much of the factual information was set forth on a two-page cover sheet for each individual. The cover sheets were accompanied by copies of the complaints and settlement agreements in the underlying legal actions. (Exhibit B to Form 95 claim). The cover sheets had spaces to provide the following information about each underlying claimant: (i) caption of suit; (ii) court; (iii) court docket number; (iv) name and address of plaintiff or underlying claimant; (v) name and address of administrator or executor if death occurred; (vi) diagnosis of injury and date and cause of death, if death occurred; (vii) shipyard or government facility where exposure occurred with address and dates; (viii) plaintiff's job title; (ix) Eagle-Picher products identified; and (x) a breakdown of damages by six components.[10]

The goals to be achieved by the § 2675(a) notice requirement have been discussed by several courts. In *Warren,* 724 F.2d at 779, the Ninth Circuit held that the notice requirement is minimal. Minimal notice would enable the agency to commence an investigation and place a value on the claim. A further objective of that section is to facilitate settlement of the claims. *See Adams,* 615 F.2d 284, 291. The settlement objective was an important consideration of Congress when it amended § 2675. S.Rep. No. 1327, 89th Cong., 2d Sess. 4–5, *reprinted in* 1966 U.S.Code Cong. & Admin.News 2515.

In this Court's past consideration and review of similar asbestos litigation, *see Keene Corp. v. United States (Keene II),* 591 F.Supp. 1340 (D.D.C.1984), and *GAF Corp. v. United States,* 593 F.Supp. 703 (D.D.C.1984), a distinction was made between tort claims involving *one* underlying incident and an omnibus claim which seeks compensation for literally hundreds of underlying claims. *GAF,* 593 F.Supp. at 709. In the single incident cases, skeletal information on claims will more than likely suffice to enable the government to commence an investigation and to evaluate the potential for settlement. Where a claim is based upon hundreds of individual incidents involving geographically and circumstantially diverse factors, then the government, at a minimum, must have enough information about the underlying claimants to satisfy the purposes of § 2675(a)—investigation of the claim and evaluation of the potential for settlement. *Cf. Lunsford v. United States,* 570 F.2d 221 (8th Cir.1977) (class action under FTCA may only be maintained if *each* claimant satisfies the jurisdictional requirements of § 2675(a)); *Allen v. United States,* 588 F.Supp. 247 (D.Utah 1984) (consolidated trial of many *individual* FTCA claims, each presumably satisfying § 2675(a) jurisdictional requirements). It is only logical that in order for the government to investigate and evaluate Eagle-Picher's omnibus indemnity claim, it must understand the claim's components. When essential factual information has not been supplied with the claim form when submitted, the government is at a loss to pursue the claim in its initial phase toward the investigative and settlement objectives.

Eagle-Picher asserts that the government's rejection of its administrative claim for lack of information is a mere obstructionist tactic because the government has information available to it regarding asbestos indemnification litigation in other jurisdictions and because the government has made it quite clear that it does not accept legal liability for these claims and, therefore, will not settle. The general familiari-

---

**9.** *See supra* at n. 6.

**10.** The six components are settlement amount and date, paid allocated expenses, Liberty Mutu-

al case handling charges, administrative costs, interest, and total amount of claim.

ty with asbestos litigation as a substitute for notice in a particular case principle was rejected in *Keene I.* 700 F.2d at 842. Moreover, the government's ability to formulate legal arguments in other jurisdictions in defense of its liability for this *type* of claim is a wholly separate issue from whether it has adequate *factual* information with regard to the particular underlying claims in this litigation. For example, at some point between the time when Eagle-Picher submitted its administrative claim and when that claim was finally disposed of by the agency, the government's liability for these types of claims could become the legal rule in limited situations as the result of litigation in other jurisdictions. The government would then need adequate factual information about each of the underlying claims to determine its liability and therefore, the settlement potential, for the omnibus claim.

Indeed, the need for adequate factual information in an action seeking indemnification for asbestos claims was set forth in *Keene I.* 700 F.2d at 842.[11] *See also GAF,* 593 F.Supp. at 709; *Keene II,* 591 F.Supp. at 1347. Eagle-Picher attempts to distinguish the claim it filed in this case from those filed in *GAF* by noting that it included more information than had been included by GAF, such as identification of the disease contracted by the underlying claimants and the claimants and job titles. Plaintiff's Opposition to Motion to Dismiss at 15 n. 21.

However, the government has pointed to many instances in which certain key information is either missing completely or is so vague as to be virtually useless. It is not enough for Eagle-Picher to proffer individual cover sheets with spaces for particular information if the information contained on them is not provided or does not measure up to what is necessary for the government to investigate or evaluate the claim. For example, one claim cites "shipyard" as the facility where exposure occurred. Defendant's Reply at Exhibit A (Benjamin Joyner). Another cover sheet shows the facility where exposure occurred as the "U.S. Army" and provides a job title of "insulation." Defendant's Reply at Exhibit A (Thomas C. Smith). The dearth of information provided in those cover sheets would not permit the government to commence investigating the underlying cases with an eye toward settlement because it would not even know where the underlying claimants were employed. Further, the defendant points to numerous examples of vague job titles, defendant's reply at Exhibit B, vague descriptions of facilities where exposure occurred, defendant's reply at Exhibit D, no descriptions as to the time period when exposure occurred, defendant's reply at Exhibit G, and no description of job titles, defendant's reply at Exhibit E.[12] In addition, Eagle-Picher does not supply information as to whether the underlying claimant's employer is the government or a private shipyard. That information is critical to both a factual investigation and to the nature of its legal claim. *See infra* at 12–15. Its attempt to rectify that omission by supplying employer category information as exhibits to its Brief in Opposition to the Motion to Dismiss does not cure the jurisdictional defect in the administrative claim.

In its statement of claims attached to its Standard Form 95, plaintiff sets forth the six legal causes of action which it contends exposes the government to liability: (i) the government's negligent design, adoption and enforcement of specifications for asbestos containing products; (ii) the government's negligent performance of its duties it had undertaken to protect the health and

---

**11.** Eagle-Picher has satisfied the first requirement set forth in *Keene I, id.,* that it provide a sum certain for the damage amount of its total claim and for each of the underlying claims. See Exhibit C to the Standard Form 95 claim. Indeed, the government does not even raise the sum certain requirement as an issue in this case.

**12.** The Court is cognizant of the fact that some of the examples cited by the defendant involve underlying claims which are no longer being pursued by Eagle-Picher because of the statute of limitations.

safety of shipyard workers; (iii) the government's negligent failure to implement or to enforce health and safety standards, requirements and regulations; (iv) the government's negligent failure to exercise reasonable care in connection with the construction and repair of naval vessels at government and contract shipyards; (v) the government's negligent selection of contract shipyards; and (vi) the government's breach of its statutory and regulatory duties. These claims are very similar to those advocated by GAF, with the exception that GAF cited the government for selling asbestos products to it. *GAF,* 593 F.Supp. at 708.

Eagle-Picher perceives that the Court should not have the objections to the form of the legal complaints that it had in *GAF,* where it held that "[i]t is inconceivable to this Court that these acts or omissions are applicable to every claim." 593 F.Supp. at 710, or that the Second Circuit had in *Keene I* with "Keene's laundry list of potential variables [which] makes it impossible for the government—or a court—to evaluate Keene's action against the government," 700 F.2d at 842. Instead of the numerous Standard Form 95s submitted by GAF, Eagle-Picher has submitted only one Standard Form 95 with one list of claims, each of which it believes is applicable to all of its underlying claimants.

In its attempt to correct the error made by other manufacturers such as GAF, Eagle-Picher looked to the superficial solution—a consolidated Form 95 with legal claims ostensibly applicable to all of the underlying claimants—without looking to the source of the problem cited by the courts in *GAF, Keene I,* and *Keene II.* The courts found that "each combination of facts, moreover, may raise a different legal issue so far as to the government's liability to Keene or our jurisdiction is concerned." *Keene I,* 700 F.2d at 839. By phrasing its claims in such a manner as to appear to apply to all of the underlying claimants, Eagle-Picher cannot disguise the fact that they would not.

Initially, the fifth claim, that of negligent selection of contract shipyards would logically only apply to underlying claimants who were private employees. Further, the remaining five claims are negligence claims. A claim for negligence requires pleading elements of duty and breach of that duty by the defendant. *See Johnson v. United States,* 547 F.2d 688, 695 n. 47 (D.C.Cir.1976); Rest.2d of Torts § 4 (1965) (Definition of "duty"). By combining its claim for both categories of employees, Eagle-Picher is assuming that the duty owed by the government to its own employees is the same as that which it owed to private employees over which it had no direct supervision and control.

To some extent, the plaintiff itself has admitted that this duty is not the same. In the hearing held on this motion, counsel for the plaintiff stated:

> There is one other difference between the two categories that we have presented here, and that is in the private shipyard cases the Government has contended—and I am sure ultimately will contend here—that as a matter of fact it did not have control over the workplace in the private shipyard context.
>
> We say that is hogwash. We say they have very specific and complete control. That is a matter of proof. *We recognize the burden of proof which we will ultimately have to carry,* but those are basically the only meaningful distinctions between the two categories of cases and we have broken the cases out in a way that reflects the legal theories we rely on.

Transcript of November 15, 1984 Hearing at 44–45 (emphasis added). Eagle-Picher also noted that "while the Government's wrongdoing consisted of a single, on-going course of conduct—the legal theory upon which its liability is based might vary between two categories of cases—*viz.,* federal shipyard cases and government-contract shipyard cases." Plaintiff's Opposition to Motion to Dismiss at 14 n. 19. *See also id.* at 3. By failing to differentiate its legal claims by category of employees and by omitting the corresponding factual infor-

mation, Eagle-Picher does not cure the defects cited in *Keene I* and *GAF*. Further, Eagle-Picher cannot fairly state that the underlying claimant's employee status is only relevant to the government's defense. *See* Plaintiff's Post-Hearing Memorandum at 17–18. Employee status is clearly an element of its claim because it defines the duty which the government owed and which it allegedly breached. At any rate, the availability of a legal defense is a critical element in determining the settlement potential for a claim—an important purpose of the notice requirement of the FTCA. Finally, the fact that Eagle-Picher may have included up to 30 underlying claimants in its claim who were not shipyard employees, Tr. at 39, but who were employed at government facilities such as the TVA or NASA, further undermines its argument that all of its legal claims were applicable to all of the underlying claimants.

■ Eagle-Picher's administrative claim fails to supply the government the adequate notice to which it is entitled under 28 U.S.C. § 2675(a). That failure is fatal to the plaintiff's claim and the government's motion to dismiss is clearly warranted. An appropriate order accompanies this Memorandum Opinion.