**KEENE CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 82–2120.**

United States District Court, District of Columbia.

July 31, 1984.

---

Jerold Oshinsky, Marcy L. Kahn, and Lorelie S. Masters, Anderson, Baker, Kill & Olick, Harold D. Murry, Jr., Clifford & Warnke, Washington, D.C., for plaintiff.

Janice Griffin O'Reilly, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

Over the past decade, thousands of asbestos workers have brought personal injury and wrongful death suits against the Keene Corporation, alleging harmful exposure to asbestos fibers contained in thermal insulation products manufactured or sold by a Keene affiliate. This lawsuit represents Keene's second attempt in a federal district court to obtain indemnification from the United States for the money Keene has expended in defending those lawsuits. Keene's first attempt, in a complaint filed in the Southern District of New York, was dismissed for lack of subject matter jurisdiction. *Keene Corp. v. United States*, No. 80 Civ. 401 (S.D.N.Y. Sept. 30, 1981), *aff'd* 700 F.2d 836 (2d Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983) (*Keene I*).[1] After the dismissal by the District Court in New York, but before the affirmance by the Second Circuit, Keene filed in this Court the present complaint (*Keene II*),[2] again seeking indemnification from the United States. The government has moved to dismiss this complaint too for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1),

---

1. In addition, Keene currently has pending two lawsuits against the United States in the United States Claims Court: *Keene Corporation v. The United States of America,* No. 585–81C and *Keene Corporation v. The United States of America,* No. 579–79C. In those cases Keene also seeks indemnification for the asbestos claims it has settled, alleging deprivation of property without just compensation and breach of contract and warranty.

2. In a Status Memorandum at ¶ 11 that Keene filed on October 12, 1982, it explained why it had filed the second complaint here in the Dis-

trict of Columbia rather than in New York. Keene stated, in part, that it based its decision on the opinion of the district court in New York, which stated:

> We note at the outset that although the persons making claims against Keene were often exposed to asbestos in maritime settings, Keene's claims over against the United States result from action and actions taken in Washington, D.C.

Slip op. at 13. Also, Keene added, that it became apparent that most if not all of the relevant documents were located in Washington, D.C.

and, in addition, on the grounds that the doctrines of res judicata, collateral estoppel and comity bar relitigation of Keene's cause of action.

This Court grants the government's motion, and for the reasons stated below, holds that application of the doctrine of collateral estoppel mandates dismissal of Keene's complaint in its entirety.

## BACKGROUND

To determine the preclusive effect of *Keene I* on this proceeding, it is first necessary to compare the complaints in each case with the purpose of ascertaining the extent of any overlap. What immediately becomes clear is that the two complaints are as similar as they can be without being absolutely identical. Keene simply copied most of its present complaint from the amended complaint[3] in *Keene I*, making only a few changes which, for the most part, are of absolutely no significance. The complaints' recitation of background facts are virtually indistinguishable, and though the amended complaint in *Keene I* was divided into 23 counts while *Keene II*'s complaint is divided into 21 counts, they allege the same causes of action. Both complaints seek to recover in one lawsuit against the United States the money Keene has expended in thousands of asbestos-related lawsuits—some resolved, some still in litigation—brought against Keene by workers, many of them shipyard workers, exposed to asbestos fibers. Both complaints assert the same jurisdictional grounds: 28 U.S.C. § 1331 (federal question); Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671–80; 28 U.S.C. § 1333 (admiralty jurisdiction); Suits in Admiralty Act, 46 U.S.C. §§ 741–52; Extension of Admiralty Jurisdiction Act, 46 U.S.C. § 740; and the Public Vessels Act, 46 U.S.C. §§ 781–90. Both complaints sound in negli-

gence, breach of warranty,[4] strict liability and unjust enrichment. *See Keene I,* 700 F.2d at 839. Both complaints list a wide variety of governmental roles that allegedly connect the government sufficiently with the asbestos products so as to render it liable under the doctrines of indemnification, contribution and apportionment for all damages that Keene has sustained as a result of the lawsuits brought by the thousands of complainants. For example, the complaints allege that the government purchased from Keene asbestos-laden products; sold such products to Keene; promulgated health regulations relating to those products; failed to disclose its superior knowledge of asbestos' dangers; and specified the use of asbestos in products manufactured pursuant to government contracts.

The complaints are similar not only in what they do contain, but also in what they do not contain. Both complaints fail to provide the factual background for each individual underlying claim against Keene, or to connect each underlying claim to a specific theory that would render the government liable. Instead they speak in the aggregate of "most," "some" or "a majority of" the claims. The Second Circuit described in great detail the contents and inadequacies of the *Keene I* complaint filed there, 700 F.2d at 838–40. Because the complaints are so very similar, the Court here need not repeat that recitation in describing the current complaint.

Only two differences between the complaints are worthy of note. First, in *Keene I* plaintiff alleged in the amended complaint the existence of more than 6,000 underlying lawsuits, and sought judgment "in an amount presently unknown but which is believed to be in excess of $20 million" for any amounts "which have been, or which may be, recovered by Keene."[5] In con-

---

**3.** In *Keene I,* Keene filed its complaint on January 22, 1980, and its amended complaint on February 26, 1981. The discussion here is of the amended complaint.

**4.** Curiously, the government in its motion to dismiss, filed August 11, 1983, at 23 represents that the complaint in *Keene II* omitted the causes of action "sounding in contract or breach of

warranty." Contrary to that assertion, the complaint in *Keene II* does allege such causes of action. *See, e.g.,* ¶¶ 109, 120, 145, 158.

**5.** The Second Circuit in talking of 14,000 cases, was referring to the number as of the date of oral argument before that court. *See Keene I,* 700 F.2d at 838 n. 1. Apparently, because the

trast the present complaint, filed a year and a half later, alleges the existence of a much larger number of lawsuits—13,000 [6]—but seeks judgment in the seemingly more precise, lesser amount of $14,788,850, without mention of any future sums.

Second, the complaints, when asserting the causes of action arising under the FTCA, refer to different administrative notices of claim. Under the FTCA, before filing a suit for damages against the United States, a claimant must first file an administrative claim with the appropriate federal agency, to which the agency must then respond within six months. 28 U.S.C. § 2675(a). The amended complaint in *Keene I* was predicated on an amended notice of claim submitted in January 1979 to eight federal agencies, while the complaint here in *Keene II* is predicated on a subsequent notice of claim submitted to the same agencies in October 1981. Like the complaints, the two administrative notices of claim differ in terms of the number of lawsuits described and the damages sought. Importantly, they differ not only from each other but also from their respective complaints. Thus in *Keene I*, where the amended complaint, filed February 26, 1981, alleged 6,000 lawsuits and sought over $20 million, the notice of claim (filed two years previously) alleged roughly 1,000 lawsuits [7] and sought $1,088,135 and "an additional amount yet to be ascertained." By way of contrast, in *Keene II*, where the complaint, filed July 28, 1982, alleges 13,000 lawsuits and seeks $14,878,850, the notice of claim (filed about 10 months earlier) lists 9,822 lawsuits,[8] while matching the complaint exactly in terms of the amount sought, $14,878,850.

Aside from the number of lawsuits and the sums claimed, the administrative notices of claim are very similar, almost as similar to each other as the complaints are to one another. Both claim notices consist of page after page of computer printout, and provide in the printout one line of information for each underlying lawsuit: name of action (sometimes, in cases involving more than one plaintiff, listing only one plaintiff by name, with the rest of the plaintiffs subsumed under the appellation *"et al."*), the jurisdiction, the date complaint was served, the amount of general and punitive damages alleged in the complaint, the case number and court, and the amount of settlement, if any. Like the complaints, the notices fail to link any of the claims to one or another of the theories of liability. *See Keene I,* 700 F.2d at 840–41. The only other difference between the notices—apart from numbers and sums—lies in the additional schedules appended to *Keene II*'s notice of claim, where Keene lists its insurance carriers and the amounts of its deductibles on its policies, and provides documentation of monies paid in settlements and judgments. In all other respects, the notices of claim are the same.

## ANALYSIS

The government, in moving to dismiss, points to the obvious similarity between the two complaints and therefore seeks to dismiss the present complaint under the doctrine of res judicata, collateral estoppel and comity. Alternatively, should this Court hold those doctrines inapplicable, the government argues that this Court should dismiss for lack of subject matter jurisdic-

---

amended complaint in *Keene I* sought damages for all future claims, the Second Circuit used the updated figure of 14,000, even though only the earlier figure of 6,000 was used in the amended complaint. In its petition to the Supreme Court for a writ of certiorari, filed May 11, 1983, Keene alleged that it had been sued in more than 17,000 actions.

**6.** At oral argument before this Court on December 8, 1983, counsel for Keene represented that as of that date Keene was named as defendant in some 20,597 underlying lawsuits, with an

average of 434 new claims filed, and 212 claims disposed of, every month. Transcript at 57.

**7.** Of the 1,000 underlying cases, approximately 37 were listed as settled, generally with the specific settlement amount included, and 21 were listed as dismissed or otherwise resolved.

**8.** Of the 9,822 underlying lawsuits approximately 1,693 cases were listed as settled, with the specific settlement amount provided for each settlement, and approximately 202 cases were listed as dismissed or otherwise resolved.

tion, for the same reasons that the courts in *Keene I* dismissed the complaint there.

In opposing the government's motion, the plaintiff argues that for a number of reasons this complaint should not be dismissed despite its similarity to the *Keene I* complaint. First, with respect to the FTCA claims, Keene contends that in contrast to *Keene I,* here the government waived its right to object to the sufficiency of the 1981 notice of claim by failing to take any action within the six months prescribed by 28 U.S.C. § 2675(a). Second, Keene contends that its complaint is not barred by res judicata, collateral estoppel or comity, since the dismissal in *Keene I* on jurisdictional grounds does not preclude Keene from remedying the jurisdictional defects so that it may be heard on the merits. Lastly, Keene argues that there exists subject matter jurisdiction under the FTCA and the various admiralty statutes.

## A.

### Waiver and the FTCA

For a plaintiff to assert a tort claim against the federal government under the FTCA, a threshold requirement is the filing of a proper administrative claim. Further, the FTCA claimant may not file suit in district court until his administrative claim "shall have been finally denied by the agency." 28 U.S.C. § 2675(a). However, section 2675(a) then adds that under certain circumstances, failure of an agency to dispose of the claim constitutes denial:

> The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

*Id.* Here almost eight months elapsed from October 1, 1981, when Keene sub-

mitted the notice of claim forming the basis for *Keene II,* until May 20, 1982, when the government first responded to the claim. Consequently Keene claims that the government, in waiting beyond the six-month period, waived its right to object to the adequacy of the notice, and the government should not be permitted to circumvent the statutory period by now raising inadequacies in the amended notice of claim after neglecting to do so within the statutory period.

 The Court rejects that argument. The administrative filing requirements of section 2675 are jurisdictional and cannot be waived. *Keene I,* 700 F.2d at 841.[9] *See also Lurch v. United States,* 719 F.2d 333, 335 n. 3 (10th Cir.1983), *cert. denied,* ──── U.S. ────, 104 S.Ct. 1710, 80 L.Ed.2d 182 (1984); *Richman v. United States,* 709 F.2d 122, 124 (5th Cir.1983). Thus, if an administrative claim is defective under section 2675, this Court lacks subject matter jurisdiction regardless of the government's action or inaction. Section 2675(a), in providing the claimant with the option of filing suit after six months, contemplates a notice of claim complying with its requirements. For such a claim, six months relieves the claimant of the obligation of exhausting his administrative remedies; six months does not transform a jurisdictionally defective notice into a valid one.

In short, the government's delay cannot preclude it from asserting as a defense the jurisdictional deficiencies in Keene's amended notice of claim.

## B.

### Res Judicata and Collateral Estoppel

With the passage of time, the number of actions brought against Keene has escalated. In *Keene I,* the 1979 amended notice of

9. In support of this proposition, the court in *Keene I* cited *House v. Mine Safety Appliances Company,* 573 F.2d 609, 617 (9th Cir.), *cert. denied,* 439 U.S. 862, 99 S.Ct. 182, 58 L.Ed.2d 171 (1978). *House* held that even the requirements of the FTCA's settlement regulations, promulgated pursuant to a different section—section 2672—of the FTCA, were jurisdictional. That conclusion was overruled by the Ninth

Circuit in *Warren v. United States Department of the Interior Bureau of Land Management,* 724 F.2d 776 (9th Cir.1984). *Keene I,* on the other hand, explicitly left that question open. *Keene I,* 700 F.2d at 841 n. 9. However, nothing in *Warren* disturbed *House's* holding that the *statutory* requirements of section 2675 were jurisdictional and it is for that proposition that *House* is cited in *Keene.*

claim referred to 1,000 underlying claims. The amended complaint referred to 6,000. In *Keene II*, the 1981 notice of claim mentions 9,822 lawsuits, a number increased to 13,000 in the subsequent complaint. By the time *Keene I* reached the Second Circuit the number reached 14,000; in the petition for writ of certiorari—17,000, and, by the time of oral argument before this Court in December 1983, the number exceeded 20,000. Obviously, many of these underlying claims were brought against Keene after it filed its 1979 amended notice of claim and its amended complaint in *Keene I*. Nonetheless, despite the fact that at the time of *Keene I* the existence of many of the underlying claims was unknown to Keene or even to the claimants themselves, the government makes the argument that under the doctrine of res judicata the dismissal in *Keene I* bars *all* of Keene's claims for indemnification, even those unknown or non-existent at the time of *Keene I*. The government contends that because Keene sought in its amended complaint in *Keene I* recovery for amounts "which have been, *or which may be,* recovered from Keene" (emphasis added), the doctrine of res judicata dictates that the dismissal of that complaint forever precludes all claims, including those "which may" accrue in the future.

In opposition, Keene argues that the dismissal in *Keene I* was only a "procedural" dismissal for lack of subject matter jurisdiction, based on the particular jurisdictional deficiencies of a particular notice of claim and particular complaint. Keene claims that nothing precludes it from correcting those deficiencies and trying once again even with respect to those claims listed in *Keene I*, and certainly with respect to subsequent claims never included in *Keene I*. The most that Keene is prepared to concede is that under the doctrine of collateral estoppel it is estopped from relitigating the sufficiency of the specific notice of claim and complaint that were before the courts in *Keene I*. All other issues, it argues, are open to relitigation. For example, it asks that this Court adopt the Fourth Circuit holding in *White v. Johns-Manville Corp.*, 662 F.2d 234 (4th Cir.

1981), *cert. denied,* 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982), that the personal injury claims of shipyard workers engaged in installation of asbestos insulation are cognizable in admiralty, despite *Keene I*'s explicit rejection of that view. *See Keene I,* 700 F.2d 844–45.

As shown below, Keene is correct in its assertion that the doctrine of collateral estoppel, not res judicata, applies here. But Keene's application of collateral estoppel is far too miserly; even collateral estoppel mandates the dismissal of Keene's entire complaint.

### 1.

Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). *See also United States v. Mendoza,* — U.S. —, 104 S.Ct. 568, 571 & n. 3, 78 L.Ed.2d 379 (1984); *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 597–98, 68 S.Ct. 715, 719–20, 92 L.Ed. 898 (1948). Because res judicata bars relitigation of the same cause of action, the rule binds the parties not only to matters that actually were raised in the prior action, but also to matters that could have been raised. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). In contrast, collateral estoppel applies only to "those issues [which] were conclusively determined in a prior action." *United States v. Stauffer Chemical Company,* — U.S. —, 104 S.Ct. 575, 578, 78 L.Ed.2d 388 (1974).

From the Supreme Court's definition of res judicata, it is readily apparent that the doctrine is inapplicable to the complaint in *Keene II.* Res judicata operates only when there has been a prior "judgment *on the merits.*" In *Keene I* the Second Circuit affirmed the dismissal for lack of subject matter, based on a deficient complaint and amended notice of claim, without ever reaching the merits. When a suit is dismissed for want of jurisdiction, prior to a decision on the merits, the judgment does not bar another suit, once the jurisdictional defect is remedied. *See Costello v. United States,* 365 U.S. 265, 284–88, 81 S.Ct. 534, 544–45, 5 L.Ed.2d 551 (1961); *Stebbins v. Keystone Insurance Company,* 481 F.2d 501, 508–09 & nn. 19, 21a (D.C.Cir.1973); Restatement (Second) of Judgments § 20 (1982); Fed.R.Civ.P. 41(b) (dismissal for lack of jurisdiction does not constitute adjudication on the merits). Obviously then, res judicata, whose broad preclusive effect bars any future suit based on the same cause of action, is inapplicable.

### 2.

Collateral estoppel, however, with its more limited preclusive effect, is applicable. Collateral estoppel bars relitigation in *Keene II* of issues actually litigated and necessary to the holding in *Keene I.* Keene seems to believe that the only issue actually determined in *Keene I* was the sufficiency of *Keene I*'s amended notice of claim and the amended complaint, and that collateral estoppel bars only relitigation of that narrow issue. That is incorrect. Numerous issues of law were, of necessity, resolved in determining the sufficiency of the amended notice of claim and amended complaint. Under the doctrine of collateral estoppel, those issues of law, like issues of fact, may not be relitigated. *Stauffer,* 104 S.Ct. 578–79.[10] Consequently, despite the split in the circuits with respect to a number of the issues of law that Keene raises, *see, e.g., Harville v. Johns-Manville Products Corporation,* 731 F.2d 775, 779, 787 (11th Cir.1984) (summarizing views of the various circuits with respect to the applicability of admiralty jurisdiction to asbestos-related claims of shipyard workers), this Court is bound by the holdings of the courts in *Keene I* in determining the issues of law relating to this proceeding. This does not mean that Keene may not attempt to cure the jurisdictional defects in its complaint of *Keene I* merely because *Keene I* dismissed that complaint. Rather, any effort to cure those deficiencies must be scrutinized according to the standards set forth in *Keene I,* regardless of the standards normally applicable in this or any other circuit. *Keene I* is the law of this case.

To simplify this Court's determination of whether the new complaint and notice of claim in *Keene II* are jurisdictionally adequate in light of *Keene I,* the Court will begin with a list of the relevant rulings of the courts[11] in *Keene I.* For ease of reference, the Court will divide them into two parts: first, those relating to the claims under the FTCA, where the notices of claim and the differences between them may be of importance; second, those relating to the non-FTCA claims, where the notices of

---

**10.** *Stauffer* held that the doctrine of mutual defensive collateral estoppel is applicable against the government, thereby precluding the government from relitigating the same issue of law already resolved against it in another case against the same party involving virtually identical facts. 104 S.Ct. at 578. Though *Stauffer* seems to retain the "exception to the applicability of the principles of collateral estoppel for 'unmixed questions of law' arising in 'successive actions involving unrelated subject matter.'" *Id.* at 579, that exception is wholly inapposite here. Even assuming that *Keene I*'s holdings represent "unmixed questions of law" which may, under narrow circumstances, be relitigated, it cannot be said that the subject matter of *Keene II* is unrelated to that of *Keene I.* Indeed much of the subject matter is identical, since the thousands of claims in *Keene I* are presumably included in the even larger number of claims in *Keene II.* Consequently, like the Supreme Court in *Stauffer,* this Court will bar relitigation of questions of law between the same parties.

**11.** Those determinations are generally the same for both the District Court and the Second Circuit, since the Court of Appeals affirmed the dismissal of the complaint in *Keene I* "for substantially the reasons stated in [Judge Goettell's] opinion" *Keene I,* 700 F.2d at 840.

claim are unnecessary and therefore irrelevant.[12]

The following rulings under the FTCA are noted:

1. No jurisdiction exists under the FTCA as to those claims for which Keene has filed no administrative notice of claim. *Keene I,* 700 F.2d at 841.

2. No jurisdiction exists under the FTCA unless the statement of damages in any administrative notice of claim contains a sum certain. *Id.* at 841–42.

3. "Where separate claims are aggregated under the FTCA," the notice of claim "must present the government with a definite damage amount for each claim." *Id.* at 842.

4. Under the FTCA the burden is on Keene to provide the government in the notice of claim with "sufficient information regarding the nature and merits of Keene's claim so far as liability is concerned." *Id.* Keene must provide the factual background and the specific legal theory of governmental liability for each underlying claim individually or, at the very least, for manageable groups of claims arranged by category of liability. Keene does not sustain its burden by providing generalizations for all the claims in aggregate. *See Keene I,* 700 F.2d at 838, 840, 842.

5. Keene's action is not a third-party action under Fed.R.Civ.P. 14 which would thereby be exempt from the filing of a notice of claim by virtue of 28 U.S.C. § 2675(a). *Keene I,* 700 F.2d at 842–43 & n. 10.[13]

The following non-FTCA rulings are noted:

6. "Section 1331 [federal question jurisdiction] does not establish a waiver of sovereign immunity and therefore cannot act as a basis for federal jurisdiction" over

Keene's claims. *Keene I,* 700 F.2d at 838 n. 3.

7. "Admiralty jurisdiction in tort exists when the wrong (1) took place on navigable waters ("situs") and (2) 'bear[s] a significant relationship to traditional maritime activity' ("status")." *Id.* at 843 (citing *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 254–61, 93 S.Ct. 493, 497–01, 34 L.Ed.2d 454 (1972)).

8. With respect to the situs test, "[a]dmiralty jurisdiction clearly does not extend to those workers who were exposed to asbestos in power plants, refineries, and land-based commercial facilities." *Id.* at 844.

9. Additionally, the situs test requires that for admiralty jurisdiction to exist for a group, all the workers in the group must be maritime workers. "Where a group is composed of workers with and without maritime status, admiralty jurisdiction does not exist as a group." *Id.*

10. Even if the situs test is satisfied, the status test of admiralty jurisdiction is not satisfied where the acts or omissions do not relate to traditional maritime activity. Specifically, Keene must "allege that its insulation was designed specifically for maritime use." *Id.* "[T]he roles attributed to the government and allegedly giving rise to Keene's causes of action [in *Keene I*]—the government's sale of asbestos to Keene, its specification of asbestos as a component of insulation it purchased from Keene, its alleged breach of its duty to inspect the work place, its obligations as a promulgator of health regulations—do not bear a significant relationship to traditional maritime activities such as 'navigation and commerce.'" *Id.*

11. "To the extent that Keene's claims are contractual, its remedy is in the Court

---

**12.** The one exception is the Extension of Admiralty Jurisdiction Act, which, like the FTCA, also requires that a notice of claim be filed with the appropriate federal agencies. *See Keene I,* 700 F.2d at 843 n. 12.

**13.** The Second Circuit specifically left open the question of whether, under special circumstances, such as those of *Raybestos-Manhattan, Inc. v. United States,* No. H–78–416 (D.Conn. Feb. 15,

1979), an action such as *Keene's* might be excused from the administrative filing requirements as a third-party action. 700 F.2d at 842 n. 10. However, it is clear that the complaint in *Keene II* is identical to the complaint in *Keene I* in all respects relevant to the *Raybestos* analysis. Consequently, even should such an exception exist, the complaint here, like that in *Keene I,* does not fall within that exception.

of Claims under the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491." *Id.* at 845 n. 13.

■ Examining the *Keene II* complaint and 1981 notice of claim in light of the holdings in *Keene I*, this Court concludes that Keene is collaterally estopped from relitigating its claims, both with respect to the FTCA claims and the remaining claims.

### The FTCA Claims

Beginning first with the FTCA claims, though Keene alleges in its *Keene II* complaint the existence of 13,000 lawsuits, only 9,822 are listed in its 1981 notice of claim. Under *Keene I* there is no subject matter jurisdiction under the FTCA to entertain any claims beyond the 9,822. Furthermore, though Keene has presented the government with a sum certain as to all the 9,822 in aggregate, it has not presented the government in the 1981 notice of claim with a damage amount for each underlying claim. Indeed, for many of the claims it would be impossible to present a sum certain since many claims have not yet been settled or resolved. Therefore, under *Keene I* there exists no jurisdiction over those claims within the 9,822 for which Keene presents no sum certain. Next, even with respect to those underlying claims for which Keene presents an individualized sum certain there exists no subject matter jurisdiction because there is a failure to provide sufficient information regarding the nature and merits of each of the claims. Both in the 1981 notice of claim and in the complaint, Keene fails to allege for each claim the specific theory of liability and the underlying facts which would render the government liable. Though Keene has provided some additional information in *Keene II* that it did not provide in *Keene I*, such as the nature of its insurance policies, the names of its insurance companies, and the like, that information still does not enable the government to evaluate its exposure to liability. The information is still too generalized to constitute sufficient notice. *See Keene I*, 700 F.2d at 842.

Lastly, under *Keene I* Keene's complaint is not a third-party complaint excused from the requirement of filing a notice of claim.

In short, the issues of law resolved in *Keene I* mandate a dismissal of Keene's FTCA claims in *Keene II*, since the minimal changes in *Keene II* do not rectify the flaws mandating dismissal.

### The Admiralty Claims

Similarly, with respect to the admiralty claims, Keene is wrong in its argument that it has corrected the jurisdictional deficiencies of the complaint in *Keene I*. Keene points to the allegations in paragraph 14 of its complaint in *Keene II* which, it claims, were not contained in its earlier complaint. That paragraph, along with paragraph 15 and the counterpart to those paragraphs in *Keene I*, are set out in the margin.[14] Keene also points to the

---

**14.**

**Complaint Keene II**

14. The pleadings and discovery in the underlying cases demonstrate that a majority of the claimants seek recovery for alleged injuries caused by exposure to asbestos fibers while engaged in maritime employment in the installation of high temperature thermal insulation around pipes and boilers on naval ships during their initial construction, during the repair of ships already launched, and during rip-outs of old thermal insulation for ship repair. The claimants received their alleged injuries while working with asbestos during ship construction and repair on ships already afloat in navigable waters, on vessels in dry dock in the shipyards, and in shops in the shipyard. It has been estimated that approximately 90 percent of the insulation work at a shipyard was done aboard ship and the remainder in a shop.

15. Some of the claimants were involved in installing high temperature thermal insulation around pipes and boilers in power plants and other industrial and commercial plants, including refineries. Some of these work sites were government projects or projects operating pursuant to government contracts and specifications. Some of the claimants worked at shipyards and also at power plants or other industrial and commercial plants.

**Amended Complaint Keene I**

13. (a) Most of the claimants were involved in installing high temperature thermal insulation around pipes and boilers on naval ships, on vessels in navigable waters, and in power plants, and other industrial and commercial plants including refineries.

(b) Various claimants have alleged that at the times relevant herein, they were engaged in maritime employment and in performing shipbuilding and ship repair on board ships in navigable waters of the United States.

(c) Various claimants have alleged that at the times relevant herein, they were engaged in maritime employment and in performing shipbuilding and ship repair on shore alongside ships in navigable waters of the United States.

addition, in paragraph 4 of its complaint here in *Keene II*, of the sentence "[m]any of these [asbestos] products were advertised specifically for maritime use."

Those cosmetic changes do nothing to rectify the problems identified in *Keene I*, with respect to either the situs or the status test of admiralty jurisdiction. In the *Keene II* complaint Keene fails to satisfy the situs test because it still alleges that some of the claimants were exposed to asbestos in land-based commercial facilities such as power plants, refineries, and industrial commercial plants. Consequently there exists no subject matter jurisdiction for those workers nor for the group of worker-claimants as a whole since admiralty jurisdiction does not exist as a group "[w]here a group is composed of workers with and without maritime status." *Keene I*, 700 F.2d at 844. Furthermore, Keene still does not satisfy the status test. *Keene I* held that the status test was not satisfied in part because "Keene does not allege its insulation was designed specifically for maritime use." *Keene I*, 700 F.2d at 844. The mere addition in *Keene II* of the sentence "[m]any of those [asbestos] products were advertised specifically for maritime use" does not rectify the flaw. It lacks the specificity required for each underlying claim; from the complaint or notice of claim it is impossible to identify which claimants were exposed to the products designed for maritime use. Finally, *Keene I* held that Keene's complaint did not satisfy the status test because the specific roles attributed by Keene to the government lacked "a significant relationship to traditional maritime activities." *Keene I*, 700 F.2d at 844. Keene merely re-alleges those same roles here, without

showing how they relate to traditional maritime activities.

As for federal question jurisdiction, *Keene I* held that 28 U.S.C. § 1331 does not constitute a waiver of sovereign immunity and cannot serve as the basis of Keene's complaint. That is equally true here.[15]

## CONCLUSION

The words of the district court in New York are clearly appropriate here: "Keene has attempted to do too much at one time, with too little jurisdiction." *Keene I*, mem. op. at 22 (quoted in *Keene I*, 700 F.2d at 840). Although the plaintiff is not precluded from correcting the jurisdictional mistakes it made in its first quest for indemnification, it is precluded from attempting to do so according to a new set of rules. In that regard, the fact that Keene brought suit here rather than New York makes no difference. In New York, Keene litigated a number of legal issues against the government and lost. Under the doctrine of collateral estoppel those legal principles bind Keene in its lawsuits against the United States in any forum, no matter what the location. Applying those principles to Keene's new complaint and its 1981 amended notice of claim, the Court finds that the plaintiff's effort to rehabilitate its claim has failed. The similarities to its previous complaint and notice of claim are so striking that dismissal of the New York lawsuit mandates dismissal of this lawsuit.

An appropriate order will be entered.

---

**15.** Keene also raises certain claims under the Federal Employees Compensation Act (FECA), 5 U.S.C. §§ 8101–8193. *Keene I* dismissed those claims in a footnote, 700 F.2d at 845 n. 13, and they deserve no more than a footnote here. FECA does not "constitute a waiver of sovereign immunity for third parties"; Keene must be able to assert FTCA or admiralty jurisdiction which it has failed to do. *Id.*