Lilton I. DAVIS, Appellant,

v.

Mary O. Short DAVIS, Appellee.

No. 93–FM–254.

District of Columbia Court of Appeals.

Argued Feb. 10, 1995.
Decided Aug. 7, 1995.

Patricia A. Berlin, Arlington, VA, for appellant.

Chukwuma I. Odelugo, Washington, DC, for appellee.

Before FERREN, FARRELL, and RUIZ, Associate Judges.

FARRELL, Associate Judge:

On this appeal from a denial of declaratory relief, the issue is whether the trial court correctly applied the doctrine of collateral estoppel to block appellant from relitigating the issue of whether his estranged wife and her two minor children could be made to undergo blood testing in connection with the issue of paternity. We affirm.

## I. The Facts

Appellee Mary O. Short Davis was married to Julius R. Short until she filed for divorce in late 1978. Also in 1978, Mrs. Davis gave birth to Kelli Davis, and in 1980 she gave birth to Lilton Davis, Jr. In June 1984 Mrs. Davis married appellant Lilton Davis. On May 25, 1989, Mr. Davis filed a complaint for divorce to which, on July 2, 1989, Mrs. Davis filed an answer and counterclaim. Mr. Davis moved to compel Mrs. Davis, Kelli, and Lilton Jr. to undergo HLA/DNA blood tests to determine whether Mr. Davis is the biological father of the children. Following four days of evidentiary hearings on the motion, Judge George W. Mitchell denied it on February 2, 1990, *nunc pro tunc* to December 8, 1989, the final hearing date. He concluded that Mr. Davis had "only shown a 'mere suspicion' of non-paternity. He has not overcome the statutory presumption of paternity, *see* [D.C.Code §§ 16–909(a), –909(a)(3) (1989)]." Judge Mitchell scheduled a date for trial of the divorce action, but on April 24, 1990, Mr. Davis voluntarily dismissed his complaint for divorce. Mrs. Davis' counterclaim remained outstanding.

On August 8, 1990, Mr. Davis, alleging that he had discovered that Mrs. Davis had been married to another man at the time of Kelli's birth, moved pursuant to Super.Ct.Civ.R. 60(b) to vacate the denial of the motion for an HLA blood test. On October 4, 1990, Judge Mitchell held a hearing on the asserted newly discovered evidence, and on January 10, 1991, he denied the renewed request for a blood test.[1]

Also in January 1991, Mrs. Davis was granted leave to amend her counterclaim to include a prayer for absolute divorce. The amended claim stated that the parties had separated on February 16, 1989. In May 1991 Judge Zinora Mitchell–Rankin granted Mr. Davis' motion to dismiss the counterclaim on the ground that it failed to allege the jurisdictional requirement that the parties had been separated for six months "next preceding the commencement of the action." D.C.Code § 16–904(a)(2) (1989). It appears that no subsequent action for divorce has been filed.

On May 23, 1991, Mr. Davis filed in Superior Court the present complaint for a declaratory judgment that he was entitled to have Mrs. Davis and the two minor children undergo blood testing. Then–Judge Eric H.

---

1. The judge denied Mr. Davis' request to certify the matter for an interlocutory appeal. *See* D.C.Code § 11–721(d) (1989).

Holder, Jr. heard argument on the complaint and, in a written memorandum order and opinion, denied declaratory relief on the ground that collateral estoppel barred appellant from relitigating the issue already twice decided in the divorce action. Following the denial of his motion to reconsider, Mr. Davis brought this appeal.

## II. Analysis

Our task is to determine whether Judge Holder correctly applied collateral estoppel to the facts of this case.[2] That is a legal issue which we decide *de novo. See Smith v. Jenkins,* 562 A.2d 610, 613 (D.C.1989).

Collateral estoppel, or issue preclusion,

> renders conclusive in the same or a subsequent action determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum.

*Washington Medical Center v. Holle,* 573 A.2d 1269, 1283 (D.C.1990); *see Smith v. Jenkins,* 562 A.2d 610, 617 (D.C.1989); *Ali Baba Co. v. WILCO, Inc.,* 482 A.2d 418, 421 (D.C.1984).[3] Of the four requirements, only the second—determination by a valid, final judgment on the merits—presents analytical

difficulty here. We therefore defer discussion of that requirement until last.

### A. "[A]ctually litigated"

The issue raised in the complaint for declaratory judgment was whether Mrs. Davis and her children should be compelled to undergo HLA blood testing. That issue had already *twice* been submitted for the trial court's determination: first, in Mr. Davis' 1989 motion for a blood test, and second, in his August 8, 1990 Rule 60(b) motion to vacate the earlier denial. Thus, as appellant concedes in his brief, "the issue of HLA testing was actually litigated." The fact that the related issues of divorce, child custody, and child support were not litigated (because appellant dismissed his complaint for divorce) is beside the point. In suggesting that these unresolved questions made issue preclusion inapplicable, appellant mistakenly relies on *Holle, supra.* In that case the issues asserted to have been preclusively resolved in an earlier proceeding (in bankruptcy) had been "specifically reserved" by the bankruptcy judge "for resolution in another forum," 573 A.2d at 1280, a very different situation than that presented here.

### B. "[F]ull and fair opportunity for litigation"

In *Oubre v. District of Columbia,* 630 A.2d 699 (D.C.1993), an appeal from an ad-

---

2. No one questions that the trial court had jurisdiction to grant or deny appellant declaratory relief. *McIntosh v. Washington,* 395 A.2d 744, 748–49 (D.C.1978). Nor has appellee ever contended—in the trial court or here—that the trial court was required to stay its hand under principles of ripeness or "justiciability," *see Smith v. Smith,* 310 A.2d 229, 231 (D.C.1973), the complaint and counterclaim for divorce having both been dismissed. As the parties evidently agree that the correctness of Judge Holder's ruling directly affects their rights and obligations in the future in regard to the children, and, indeed, as a decision here may forestall needless relitigation of the blood-test issue, we proceed to the merits of the collateral estoppel determination.

3. By contrast, res judicata, or claim preclusion, means that "when a final judgment has been entered on the merits, the parties or those in privity with them are barred, in a subsequent proceeding, from relitigating the same claim or

any claim that might have been raised in the first proceeding." *Holle,* 573 A.2d at 1280–81. *See Jenkins,* 562 A.2d at 613.

The doctrines of collateral estoppel and res judicata both "serve[] to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" *United States v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984) (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980)). The present case concerns so-called defensive collateral estoppel, because the defendant in the action for declaratory judgment (Mrs. Davis) seeks to prevent the plaintiff from relitigating the issue of blood testing which Mr. Davis had litigated unsuccessfully in the divorce proceeding. *See Mendoza,* 464 U.S. at 159 n. 4, 104 S.Ct. at 571 n. 4; *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979), *limited by Mendoza,* 464 U.S. at 157, 104 S.Ct. at 570.

ministrative agency decision, "an evidentiary hearing [had been] held on petitioner's claim, [and] the parties were given an opportunity to make opening and closing statements, to call witnesses, to cross-examine witnesses, and to introduce exhibits. The hearing examiner made findings of fact and conclusions of law on the issues...." This court therefore found that the parties had "ha[d] an adequate opportunity to litigate" for purposes of issue preclusion. *Id.* at 703.[4] So, too, Mr. Davis had a full and fair opportunity to litigate the issue whether Mrs. Davis and the two children should be required to undergo blood testing. Judge Mitchell held successive hearings on November 28, November 30, December 4, and December 8, 1989, at which Mr. Davis had the opportunity to present witnesses and challenge contrary evidence. Indeed, he cannot presently maintain otherwise, since he has furnished us with no transcript of those hearings. *Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C.1982). Appellant argues that Mrs. Davis' failure to disclose at these hearings her marriage to another man at the time of Kelli's birth prevented full litigation of the paternity issue; but even if that were true, appellant received a full and fair opportunity to litigate the effect of this newly discovered evidence at the October 4, 1990 hearing, where, as Judge Holder found, the evidence was presented and there was "vigorous argument" by counsel as to its significance. Once more, Mr. Davis has failed to make the October 4 transcript part of the record on appeal, and thus is in no position to question the adequacy of his opportunity to renew the issue of blood testing.

### C. "[D]etermination essential to the judgment"

■ Judge Holder found that the issue of whether Mrs. Davis and the two children could be made to submit to HLA tests had become the parties' "primary concern" in the divorce claim and counterclaim. On the scant record of the proceedings appellant has provided us, we cannot say that that determination is erroneous. Judge Mitchell's February 2, 1990 and January 10, 1991 orders were therefore "essential" to any judgment that might subsequently be entered. *Compare Lassiter v. District of Columbia*, 447 A.2d 456, 460 & n. 8 (D.C.1982) (police officer's reason for responding to situation by striking appellant on the head was "a key issue in the dispute" before the earlier tribunal (citation omitted)) *with Goldkind v. Snider Bros., Inc.*, 467 A.2d 468, 473 (D.C.1983) ("claim based on breach of an agency relationship [wa]s irrelevant to [the prior] foreclosure proceeding," hence collateral estoppel "raise[d] no bar to appellants' cross-claim" based on the same breach). Indeed, given appellant's zeal in pursuing the issue by the motion to vacate based on newly discovered evidence, and the successive orders issued denying his request for a blood test, there is no question but that the testing issue lay at the heart of the parties' controversy. The fact that no judgment on the merits of the divorce action was actually entered brings us to the remaining issue for consideration.

### D. "A valid, final judgment on the merits"

■ The novel question we must decide is whether an order of the trial court not "final" for purposes of appellate review may nonetheless justify application of collateral estoppel when every other requirement of the doctrine has been met. In the particular circumstances of this case, where Mr. Davis' voluntary dismissal of his complaint is responsible for his inability to obtain appellate review, we answer this question affirmatively.

■ An aggrieved party may appeal as of right from a "final order or judgment" of the Superior Court. D.C.Code § 11–721(a)(1). "To be final, and therefore reviewable, an order must dispose[ ] of the whole case on its merits so that the court has nothing remaining to do but to execute the judgment or decree already rendered." *Dyer v. William S. Bergman & Assocs.*, 635

---

4. Nonetheless, the court ultimately reversed the agency's application of either res judicata or issue preclusion because there was "manifest error in the record of the prior proceeding," 630 A.2d at 703, a recognized exception to these doctrines in the case of administrative determinations. *Id.*

A.2d 1285, 1287 (D.C.1993) (citations and internal quotation marks omitted). Accordingly, subject to limited exceptions not applicable here, Section 11–721 "bars an appeal unless the order appealed from disposes of all issues in the case; it must be final as to all the parties, the whole subject matter, and all of the causes of action involved." *L.A.W. v. M.E.*, 606 A.2d 160, 161 (D.C.1992).

Judge Mitchell's February 2, 1990 order denying the motion for a blood test was not final in this sense because it left unresolved, among other issues, whether Mr. Davis was entitled to a divorce and how much, if any, child support he would have to pay. *See id.* at 160–61 & n. 1 (orders finding appellant to be child's father and determining temporary child support not final where question of permanent support had not been decided); *McDiarmid v. McDiarmid,* 594 A.2d 79, 80, 82 (D.C.1991). Judge Mitchell's January 10, 1991 denial of the motion to vacate also was not final since it left unresolved the same issues, which were pending through Mrs. Davis' counterclaim (now amended to include a prayer for divorce). Finally, Judge Mitchell–Rankin's dismissal for failure to meet the voluntary separation requirement of § 16–904(a)(2) was a dismissal for lack of jurisdiction, *see Williams v. Williams,* 378 A.2d 668, 669–70 (D.C.1977) (per curiam), and therefore was not "on the merits" for collateral estoppel purposes. *See Clay v. Faison,* 583 A.2d 1388, 1390–91 & n. 11 (D.C.1990) (alternative holding).[5]

■ Our decisions hold that, as a general rule, an order not final for the purpose of appeal lacks the required finality to support collateral estoppel. *See L.A.W. v. M.E.,* 606 A.2d at 161 ("The temporary child support

determination made by the hearing commissioner ... did not render the order final since hearing commissioner orders are not directly reviewable by this court"); *Ali Baba Co.,* 482 A.2d at 425 n. 17 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 28.1 (1982)) ("collateral estoppel ought not to be applied when party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action"); *see also Rhema Christian Ctr. v. District of Columbia Bd. of Zoning Adjustment,* 515 A.2d 189, 196 (D.C.1986) ("issue was actually raised and resolved in the first proceeding," thus "became finally adjudicated upon Rhema's failure to petition this court for review"). *But cf. Lassiter,* 447 A.2d at 461 n. 10 (dictum) (view that non-reviewability of judgment prevents application of preclusion doctrines "should not prevail automatically here" where appellant had "advanced no argument as to why the [earlier] proceeding may have been deficient").

On the other hand, RESTATEMENT (SECOND) OF JUDGMENTS §§ 13, 27–28, which has frequently guided this court in application of collateral estoppel,[6] is ambiguous on the issue. Section 28 and the comment thereto imply that finality for appeal purposes is integral to the question of finality for purposes of collateral estoppel.[7] At the same time, Section 13 states that "for purposes of issue preclusion ... 'final judgment' includes any prior adjudication of an issue that is determined to be sufficiently firm to be accorded conclusive effect." *Id.* at § 13. Comment g to the section acknowledges that reviewability is one of several "factors supporting the conclusion that the decision is

---

5. *But see Keene Corp. v. United States,* 591 F.Supp. 1340, 1346 (D.D.C.1984) (dismissal of action for lack of subject matter jurisdiction does not, once the jurisdictional defect is remedied, bar another action; in that subsequent action, collateral estoppel doctrine bars relitigation of issues actually litigated and necessary to holding in prior action), *modified on other grounds sub nom. GAF Corp. v. United States,* 260 U.S.App. D.C. 252, 818 F.2d 901 (1987).

6. *See, e.g., Kleinbart v. United States,* 604 A.2d 861, 864 & n. 5 (D.C.1992); *Schmittinger v. Schmittinger,* 538 A.2d 1158, 1164 n. 12 (D.C. 1988); *Jonathan Woodner Co. v. Adams,* 534 A.2d

292, 295 & n. 7 (D.C.1987); *Rhema Christian Ctr.,* 515 A.2d at 193; *Ali Baba Co.,* 482 A.2d at 425 n. 17; *Lassiter,* 447 A.2d at 461 n. 10.

7. "[R]elitigation of [an] issue in a subsequent action between the parties is not precluded" where, among other things, "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action." RESTATEMENT (SECOND) OF JUDGMENTS §§ 28, 28.1. Comment a notes that "[s]uch cases can arise, for example," because "the law does not allow review of the particular category of judgments." *Id.* at § 28, cmt. a.

final for the purpose of preclusion," but cautions that

> to hold invariably that [issue preclusion] is not to be permitted until a final judgment in the strict sense has been reached in the first action can involve hardship[, such as] needless duplication of effort and expense in the second action to decide the same issue.... In particular circumstances the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment.

*Id.* at § 13, cmt. g; *see also id.* at § 13, cmt. g, illus. 2–3. The Reporter's Note to comment g quotes *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir.1961), for the proposition that " '[f]inality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."

■ Given this uncertain state of the law, we hold, as a matter of first impression in this jurisdiction, that when the other requirements for collateral estoppel have been established, a party who voluntarily dismisses the action and thereby prevents a previous determination of an issue from becoming embodied in a valid, final judgment on the merits may be estopped from relitigating that issue. Were the law otherwise, as Judge Holder recognized, a plaintiff such as Mr. Davis who received an adverse ruling on an essential issue fully litigated in the trial court could dismiss his suit, bring an identical action, and contest the issue all over again. Issue preclusion is a "judicially developed" doctrine designed, among other purposes, "to 'relieve parties of the cost and vexation of multiple lawsuits.' " *Mendoza, supra* note 3, 464 U.S. at 158, 104 S.Ct. at 571 (citation omitted). Mr. Davis has had evidentiary hearings spanning five days on the question of paternity testing and twice lost on the issue. It is hard to imagine any justification for requiring the trial court to expend further resources and Mrs. Davis to incur additional legal expenses to give him another chance to make his case.

■ Appellant perceives an inconsistency between this holding and the "one dismissal" rule of Super.Ct.Civ.R. 41(a), which provides that (if "the notice of dismissal or stipulation" does not state otherwise) a voluntary dismissal "is without prejudice" and does not "operate[ ] as an adjudication upon the merits" unless the plaintiff "has once dismissed in any court ... an action based on or including the same claim." But while Rule 41(a) prevents application of res judicata to a first voluntary dismissal, it says nothing about whether a dismissal may serve to nullify resolution of an issue essential to the action that has been fully and fairly litigated in the trial court. In the circumstances of this case, we hold that it may not. Mr. Davis has offered no other reason for his dismissal than that his relationship with his attorney had become "irrevocably strained." The values served by issue preclusion are too important to be held hostage to an inquiry whether a dismissal has resulted from a personal problem of this sort rather than a desire to retreat and fight another day.

### III.

Because the trial judge correctly applied the elements of collateral estoppel to the facts of this case, his refusal on that ground to grant declaratory relief is

*Affirmed.*

RUIZ, Associate Judge, dissenting:

I think this case should be dismissed for lack of justiciability. The case is not justiciable now and it was not justiciable when the trial court considered it, after the divorce action and counterclaim had been dismissed. "Although this court is not governed by standing requirements under Article III of the Constitution, we look to federal jurisprudence to define the limits of '[c]ases and controversies' that our enabling statute enables us to hear." *Community Credit Union v. Federal Express Servs. Corp.*, 534 A.2d 331, 333 (D.C.1987) (quoting D.C.Code § 11–705(b) (1981)). "[D]eclaratory judgment authority does not supersede the rules of justiciability." *Smith v. Smith*, 310 A.2d 229, 231 (D.C.1973).

There is no denying that the parties have a history of heated controversy over the issue of appellant's paternity of the appellee's minor children. However, even construing appellant's request for a declaration of his entitlement to mandatory HLA/DNA blood testing as a request for a declaration of his paternity, there currently is no legal proceeding that would be affected by such a declaration nor has appellant provided "any indication of the immediacy or reason such a declaration is required." *In re D.M.*, 562 A.2d 618, 621 (D.C.1989). Because there is no "presently articulated need for a declaration," *id.*, the court is being asked to issue an advisory opinion, without the context that judicial prudence requires for sound decision-making.

Nor is judicial efficiency served by addressing the issue at this stage. To the contrary, appellant's complaint for declaratory relief states that "[a]nother action for divorce and/or annulment of the parties' marriage is inevitable, as is relitigation of the issue of Plaintiff's entitlement to HLA/DNA testing." Thus, nothing in the record before us suggests that deciding the issue now will avoid or lessen further litigation. Given the past history of litigation between the parties and the promise of more to come, we are being asked to rule in the most inefficient manner, bypassing the usual rules against piecemeal interlocutory review of discovery rulings by the trial court. I decline the invitation.