Winston **MURRAY** and Naomi Smith, Appellants,

v.

Ibrahim **GOODWIN**, Appellee.

No. 02–CV–176.

District of Columbia Court of Appeals.

Argued May 22, 2003.

Decided July 1, 2004.

Frederic W. Schwartz, Jr., Washington, DC, for appellants.

Lita Rosario for appellee.

Before TERRY and GLICKMAN, Associate Judges, and BELSON, Senior Judge.

GLICKMAN, Associate J.

The trial court awarded summary judgment to appellee Ibrahim Goodwin on the ground that appellants Winston Murray and Naomi Smith were collaterally estopped from relitigating a critical issue that was resolved against them in a related lawsuit between the same parties. This court subsequently reversed the decision in that related lawsuit and remanded the case for further proceedings, thereby nullifying the finality required for collateral estoppel to operate. We therefore reverse the judgment now before us without addressing other issues raised in this appeal.

In brief outline, Murray and Smith first sued Goodwin in the Landlord and Tenant ("L & T") Branch for possession of real estate and unpaid rent. *See Murray v. Goodwin,* 791 A.2d 77, 78 (D.C.2002). At a pretrial hearing in that action, Goodwin testified without contradiction (and apparently to the surprise of appellants' counsel) that, in the absence of a written lease, he resided in the premises rent-free under an oral arrangement with Murray that obligated him only to pay utility costs and maintain and improve the property. *See id.* Understanding Goodwin to be asserting that no landlord-tenant relationship ever existed, Murray and Smith promptly commenced an ordinary civil action against Goodwin in Superior Court outside the L & T Branch, in which they sought damages from Goodwin for his use and occupancy of their premises. *See Nicholas v. Howard,* 459 A.2d 1039, 1041 (D.C.1983) ("[A]lthough appellees may be liable for damages, in a separate action, for the use and enjoyment of appellants' townhouse, those damages are not 'rent,' and the summary proceeding in the Landlord and Tenant Branch is not the proper vehicle for their recovery of such damages."). This is the action now before us.

Meanwhile, Goodwin moved to dismiss the L & T complaint on the ground that his thirty-day notice to quit for nonpayment of rent—a condition precedent to the L & T action—was invalid because he had no contractual rent obligation. The L & T court granted Goodwin's motion, finding that a tenancy "of sorts" did exist based on Goodwin's testimony, but that this tenancy was "inconsistent" with the notice to quit because it did not require Goodwin to pay rent. *Murray v. Goodwin, supra,* 791 A.2d at 79 & 79 n. 1. Murray and Smith appealed the dismissal of their L & T complaint to this court.

During the pendency of that appeal, Goodwin moved for summary judgment in

the second action that Murray and Smith had brought against him. Goodwin argued that their use and occupancy claim, which was premised on the non-existence of a tenancy, was precluded by the L & T court's earlier finding that there was, to the contrary, a tenancy "of sorts." The trial court reviewed the basis on which the L & T complaint was dismissed, agreed with Goodwin that Murray and Smith were collaterally estopped by the L & T court's ruling, and awarded Goodwin summary judgment on their claim.[1] This appeal followed.

Then this court decided the appeal in the L & T action. "[A]ssuming for the sake of argument that Goodwin testified accurately concerning the terms of his agreement with appellants," *Murray v. Goodwin*, 791 A.2d at 79, we refrained from deciding whether a tenancy actually existed or not. We held only that the statutory definition of "rent" found in D.C.Code § 42–3501.03(28) (2001) was broad enough to encompass the minimal obligation that Goodwin described to pay utilities and maintenance costs and that the notice to quit given to Goodwin therefore "was sufficient to allow appellants to proceed on their complaint." 791 A.2d at 79. Our consequent decision to reverse the order of dismissal, reinstate the complaint, and remand for further proceedings meant that there no longer was a valid final judgment embracing the issue of tenancy in the L & T action.

It is well-settled that for collateral estoppel, or issue preclusion, to operate in subsequent litigation, a prerequisite is that the issue must have been determined previously by "a valid, final judgment." *Wilson v. Hart*, 829 A.2d 511, 514 (D.C.2003) (holding that while plaintiffs were collaterally estopped from asserting a claim based on a direct landlord-tenant relationship after a final administrative agency decision that such a relationship did not exist, they were not estopped from asserting a claim based on a purported subtenant relationship which the agency decision had not addressed);[2] *accord Ali Baba Co., Inc. v. WILCO, Inc.*, 482 A.2d 418, 421 (D.C.1984) (citing the RESTATEMENT (SECOND) OF JUDGMENTS § 27); *Davis v. Davis*, 663 A.2d 499, 501 (D.C.1995).[3]

When the trial court rendered its decision in this case, the L & T court judgment was final for purposes of issue preclusion even though the judgment was on appeal. *See, e.g., Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155, 160 (7th Cir.1995) ("A final judgment by a district court has preclusive effect even though the judgment is pending on appeal."); *Nixon*

---

**1.** On the same ground, the court awarded summary judgment to Murray and Smith on one of Goodwin's counterclaims, in which Goodwin sought to recover his outlays to maintain and improve the property. Subsequently the trial court granted Murray and Smith judgment as a matter of law on Goodwin's remaining counterclaims, which were based on Murray's alleged agreement to sell him the property.

**2.** "That doctrine [of collateral estoppel] can be invoked against a party where (1) the issue was actually litigated; (2) was determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the party; (4) under circumstances where the de-

termination was essential to the judgment." *Id.* Our determination that the second of these requirements is not satisfied in this case renders it unnecessary to examine whether the other three requirements were met, and we express no view on that question.

**3.** The *Davis* court recognized an exception to the "general rule [that] an order not final for the purpose of appeal lacks the required finality to support collateral estoppel" where a party "voluntarily dismisses the action and thereby prevents a previous determination of an issue from becoming embodied in a valid, final judgment on the merits." 663 A.2d at 503, 504. That exception is inapplicable in this case.

*v. Richey,* 168 U.S.App. D.C. 172, 180, 513 F.2d 430, 438 (1975) ("The federal rule is that pendency of an appeal does not suspend the operation of a final judgment for purposes of collateral estoppel, except where appellate review constitutes a trial de novo."). But "[i]f a decision that might be considered final for issue preclusion purposes is subsequently appealed, it is possible that an appellate decision will vitiate the finality required for issue preclusive effect." 18 *Moore's Federal Practice* § 132.03[5][b][I], p. 132–130 (Matthew Bender 3d ed.). *See, e.g., Huron Holding Corp. v. Lincoln Mine Operating Co.,* 312 U.S. 183, 189, 61 S.Ct. 513, 85 L.Ed. 725 (1941). That is what happened here: the finality was vitiated because we reversed the judgment and remanded for the L & T action to continue. As a result, the trial court's award of summary judgment in this case cannot stand; "a judgment based upon collateral estoppel or *res judicata* is no longer valid when the decision on which the court relied in applying either of the doctrines has been reversed." *Adams v. Jonathan Woodner Co.,* 475 A.2d 393, 397 (D.C.1984). "Reversal of a decision renders it invalid, and application of collateral estoppel clearly should not be based upon an invalid decision." *Id.; see also Procter & Gamble Co. v. Amway Corp.,* 242 F.3d 539, 546 (5th Cir.2001).

In applying this rule here, we think it immaterial that our opinion in the L & T appeal did not question the L & T court's determination of tenancy. It is enough that we did not affirm that determination. The upshot of our decision is that there is now no final judgment at either the trial or appellate level in the L & T case that embodies the L & T court's finding. Hence there is no longer anything to support the invocation of collateral estoppel in the use and occupancy action.

Thus, though we do not say that the trial court erred at the time that it relied on collateral estoppel to award summary judgment to Goodwin, we nonetheless must reverse that award on account of the subsequent development in the L & T case.

*So Ordered.*